404 P.2d 30

**Charles B. PETTY et al., Partners, dba Petty Investment Company, Plaintiffs and Appellants,**

v.

**GINDY MANUFACTURING CORPORATION, a corporation, Defendant and Respondent.**

**No. 10274.**

Supreme Court of Utah.

July 7, 1965.

---

3. See statement in re Lavelle's Estate, 122 Utah 253, 248 P.2d 372.

Richards, Bird & Hart, A. Ladru Jensen, Salt Lake City, for appellants.

Malcolm D. Pike, Salt Lake City, for respondent.

CROCKETT, Justice.

Plaintiff, Petty Investment Company, seeks to hold the defendant, Gindy Manufacturing Corporation, liable for a loan Petty had made to G. H. Mickelson (Freeway Trailer Sales, Inc.) who was a franchised dealer of trailers manufactured by the defendant Gindy. After the presentation of the plaintiff's evidence, the trial court granted defendant's motion to dismiss and elected to make findings as authorized by Rule 41(b) U.R.C.P. Plaintiff appeals. In such circumstances we review the evidence in the light most favorable to the findings.[1]

On September 28, 1962, Mickelson, who was already indebted to Petty in the sum of $5,000, approached the latter and requested a further loan of $12,000. He offered as security an assignment of commissions on the sale of trailers for the defendant Gindy to cover both the $12,000 new loan and the $5,000 prior indebtedness.

In order to check on representations made to him by Mickelson, Petty phoned the defendant at its place of business in Chicago and in response received a telegram which reads as follows:

Will withhold first seventeen thousand dollars in commissions to Freeway and or G. H. Mickelson for payment to you. They have sufficient orders in *or pending* to more than cover this.

Upon receipt of this telegram and allegedly relying thereon, Petty advanced Mickelson the requested $12,000 and took an assignment of Mickelson's commissions from Gindy. Attached to it was an addendum listing the "deals in process" showing the amount to be realized from each, totaling $44,300. Since making the loan plaintiff has received from the defendant

1. See statement in Lawrence v. Bamberger Railroad Company, 3 Utah 2d 247, 282 P.2d 335 (1955).

$4,000 which is all of the commissions subsequently earned by Mickelson. No further payments being forthcoming either from Mickelson or Gindy, plaintiff commenced this action.

Plaintiff does not contend that defendant Gindy was a signator to the above transaction, nor that it received any of the money. His claim for recovery against Gindy is based on the doctrine of promissory estoppel which is set forth in Section 90 of the Restatement of Contracts as follows:

> A promise which the promisor [Gindy] should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee [Petty] and which does induce such action or forbearance is binding if injustice can be avoided only by the enforcement of the promise.

We do not question the soundness of this doctrine under proper circumstances. On previous occasions we have recognized its validity.[2] The critical problem is whether the plaintiff has established a basis for its invocation.

In approaching the question as to the applicability of promissory estoppel in this case, there are some precepts which should be kept in mind. The first is that it would be somewhat at variance with traditional rules of contract law. The essence of what the plaintiff is seeking to accomplish is to have the defendant become in effect a surety or guarantor of the debt of Mickelson, without the defendant having so agreed or receiving anything for doing so. This would impose liability in the nature of a contractual obligation in the absence of the classic essentials: a promise and a consideration.[3] For this reason it is resorted to only where circumstances are such that equity and good conscience render its application imperative in order to avoid an obvious unfairness and injustice.[4] Further prerequisites to the interposition of such an estoppel are the requirements that the promise or representation relied on must be sufficiently definite and certain that the plaintiff acting as a reasonable and prudent person under the circumstances would be justified in placing reliance upon it;[5] and in case of uncertainty or doubt the re-

2. Union Tank Car Company v. Wheat Brothers, 15 Utah 2d 101, 387 P.2d 1000 (1964); Easton v. Wycoff, 4 Utah 2d 386, 295 P.2d 332 (1959).
3. It is, of course, contended that plaintiff suffered a legal detriment (by making the loan) at the implied request of defendant.
4. See Union Tank Car Co. v. Wheat Brothers, footnote 2 above, and authorities therein cited.

5. Union Tank Car Co. v. Wheat Brothers, supra footnote 2; cf. John Hancock Mutual Life Ins. Co. v. Dawson, Mo.App., 278 S.W.2d 57 (1955).; Gnekow v. Metropolitan Life Ins. Co., Mo.App., 108 S.W. 2d 621 (1937); O'Dell v. Hanson, Iowa, 42 N.W.2d 86 (1950), which cases require that the promise or representation be definite.

sponsibility is upon the plaintiff to ascertain the facts before acting upon it.[6]

With the foregoing thoughts in mind we direct attention to the telegram which is the pivotal point in this case and upon which plaintiff's claim for recovery must stand or fall. It is plain enough that the first sentence:

> Will withhold first seventeen thousand dollars in commissions * * * for payment to you. * * *

is a promise which Petty could rely upon. But this promise has been kept in that the defendant has withheld and paid to the plaintiff all of the commissions Mickelson has earned. The controversy devolves upon the second sentence:

> They have *sufficient orders in or pending* to more than cover this.

Plaintiff asserts that this goes beyond mere representation that the defendant would honor an assignment and withheld commissions as earned. He insists that it was a firm assurance to Petty that Mickelson had made enough sales to cover the loan and thus constituted a commitment that the money would be forthcoming; whereas, the defendant takes the position that it simply stated the facts accurately: that Mickelson had "sufficient orders in *or pending*" which means orders completed, or orders in prospect of completion.

For the purpose of analysis in the light of the principles we have stated above, assume that there is some merit in plaintiff's contention that the telegram could be understood as meaning that Gindy was giving a firm assurance that sufficient deals had been completed that the money was certain to be forthcoming. On the other hand, it is our opinion in giving effect to the fair import of the language in question, that there is also some merit in the defendant's argument that a distinction should be seen between "orders in" and orders which are "pending"; and that by taking note of this distinction the language could reasonably be understood as indicating that some of the orders were final and complete, whereas others were not, but were depending on future contingencies. While the mere fact that controversy exists does not always indicate that there must be uncertainty in the language, that appears to be the situation here. Accordingly, under the rules hereinabove quoted, it was incumbent upon the plaintiff to make inquiry and resolve uncertainties before acting in reliance upon the claimed representation. This the plaintiff failed to do. Moreover, when there is such uncertainty in the language of a contract, it is the prerogative of the trial court to determine the proper interpretation to be placed upon the transaction in the light

---

6. Hilton v. Sloan, 37 Utah 359, 108 P. 689 (1910); Barnett v. Wolfolk, W.Va.,

140 S.E.2d 466 (1965) and cases therein cited.

of the evidence;[7] and also whether the plaintiff acted reasonably under the circumstances.

 Upon the basis of the proof plaintiff presented, the trial court was not convinced of the correctness of the contentions upon which he must rely for recovery; and issues which were tried or triable are now concluded.[8] In that connection it is worthy of note that there are indications in the documentary evidence itself which are not at all inconsistent with such a determination. The assignment from Mickelson authorizes Gindy to pay the commissions to plaintiff "in the amounts aforementioned in this assignment as soon as the deals *have been finalized and financing arrangements have been completed*." And the addendum refers to "Deals *in process* with Gindy Manufacturing Company." The emphasized language is susceptible of being understood as meaning that some of the "deals" were in the process of being worked on and which therefore might or might not be completed in the future. Therefore, in accordance with the principles we have discussed herein, we are not persuaded that the plaintiff has established any justification for reversing the judgment.[9]

In regard to the plaintiff's contention that there should have been forthcoming from Gindy more commissions than the $4,000 Gindy paid to Petty, we spare detail and dispose of that issue summarily by stating that plaintiff similarly failed to offer proof which would compel such a finding. (All emphasis added.)

The judgment is affirmed. Costs to defendant (respondent).

HENRIOD, C. J., and McDONOUGH, WADE, and CALLISTER, JJ., concur.

7. See Charlton v. Hackett, 11 Utah 2d 389, 360 P.2d 176 (1961).
8. See Wheadon v. Pearson, 14 Utah 2d 45, 376 P.2d 946.

9. That judgment of trial court is presumptively correct, and that burden to show ground for reversal is upon appellant, see Charlton v. Hackett, footnote 7 above.