**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 24 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WARDLEY CORPORATION, a Utah
corporation,

      Plaintiff - Appellant,

v.

MEREDITH CORPORATION; and
MEREDITH CORPORATION d/b/a
BETTER HOMES & GARDENS
REAL ESTATE SERVICE,

      Defendants - Appellees.

No. 03-4021
(D. Utah)
D.C. No. 01-CV-496-K

---

**ORDER AND JUDGMENT** *

---

Before **LUCERO** , **TYMKOVICH** , and **PORFILIO** , Circuit Judges.

---

Wardley Corporation ("Wardley") brought breach of contract, negligent

misrepresentation, and fraud claims against Meredith Corporation ("Meredith")

following Meredith's sale of the rights to its Better Homes and Gardens

trademarks to GMAC Home Services ("GMAC"). The district court exercised

diversity jurisdiction over the matter pursuant to 28 U.S.C. § 1332(a)(1) and

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Wardley appeals the dismissal as well as the district court's decision to grant Meredith's motion to reconsider its motion to dismiss. We **AFFIRM**.

## I

Meredith, publisher of <u>Better Homes and Gardens</u> magazine since 1924, began to develop a real estate franchising service in 1978; the franchising service allowed member franchisees to use the trademarks (the "Marks") owned by Meredith and associated with <u>Better Homes and Gardens</u>. Wardley began to participate in the service in 1983, and the relationship was covered by a series of written contracts, the last of which was entered on May 1, 1998 (the "Contract").

On June 29, 1998, Meredith announced the sale of its franchising service to GMAC. The terms of the transfer provided that former franchisees could continue to use the <u>Better Homes and Gardens</u> Marks temporarily, but it was uncertain whether GMAC might ultimately require the franchisees to change to GMAC Marks. In April 1999, Wardley learned that GMAC would indeed require its franchisees to make the alteration, and that the change would be at Wardley's expense. Nonetheless, Wardley entered a new contract with GMAC. Notably, GMAC is not a party to this litigation. Some time later, Wardley sold its real estate service, allegedly because of the costs of changing its Marks.

Claiming that Meredith breached its contract by: (1) selling to GMAC, and

(2) failing to "protect and defend" the Marks as required by the Contract, Wardley sued Meredith for breach of contract, breach of the implied covenant of good faith, promissory estoppel, and unjust enrichment. Wardley further asserted claims of negligent misrepresentation and fraud, alleging that various officers of Meredith orally represented that they would never sell, and that the decision to sign the Contract was induced by those representations.

After a hearing, the district court initially dismissed a substantial portion of Wardley's claims, relying on several contractual provisions. First, Paragraph 16(a) of the Contract clearly allowed Meredith to transfer or assign its rights and obligations: "Assignment. Better Homes and Gardens shall have the right to transfer or assign all or any part of its rights or obligations under this Contract to any person or legal entity." Paragraph 3 required Meredith to "protect and defend" the Marks: "Better Homes and Gardens will protect and defend the Marks in order to maintain their value to [Wardley] and Better Homes and Gardens." Finally, Paragraph 20 of the Contract contained the following integration clause: "[Wardley] acknowledges that neither Better Homes and Gardens nor any of its employees has made representations, promises, or agreements. . . not set forth in this Contract. . . and that this Contract is the entire agreement of the parties."

Based on Paragraph 16's clear allowance of transfers and assignments, the

district court dismissed Wardley's claims to the extent that they relied on the argument that Meredith breached by selling to GMAC. Troubled by Meredith's apparent obligation to "protect and defend" the Marks, though, the district court initially refused to dismiss Wardley's claims to the extent that they relied on that language. Meredith moved for reconsideration of the district court's refusal to dismiss the claims that were based on the "protect and defend" language, pointing to Paragraph 18 of the Contract, which states that "[a]fter termination, expiration, transfer, or assignment of this Contract for any reason, Member shall cease to have any right to use the Marks in any manner."

Finding that language dispositive, the district court granted Meredith's motion for reconsideration and dismissed the remainder of Wardley's contract-based claims. In addition, the court found that even if Meredith had represented to Wardley that it would never sell the Marks, the Contract's language precluded reasonable reliance on such statements; consequently, it dismissed Wardley's negligent misrepresentation and fraud claims. Wardley appeals.

## II

We review claims dismissed pursuant to Fed. R. Civ. P. 12(b)(6) de novo. Wark v. United States, 269 F.3d 1185, 1190 (10th Cir. 2001). Under the principles of diversity jurisdiction, and because the choice of law provision in the Contract provides that "the Contract shall be construed in accordance with the

laws of the state in which Member is licensed to use the Marks," we look to Utah law for our review of the substantive claims in this case. See Lytle v. City of Haysville, 138 F.3d 857, 868 (10th Cir. 1998).

## A

With respect to Wardley's breach of contract claim based on Meredith's sale of its service to GMAC, Paragraph 16(a) of the Contract specifically provides that "Better Homes and Gardens shall have the right to transfer or assign all or any part of its rights or obligation under this Contract to any person or legal entity." Moreover, Paragraph 20 contains a specific integration clause, thus precluding any claim of breach based on extra-contractual representations; where, as here, a contract is integrated, a party may not vary or modify its terms based on parol evidence. See Lee v. Barnes, 977 P.2d 550, 552 (Utah Ct. App. 1999). The plain language of the contract therefore compels us to agree with the district court's dismissal of Wardley's claim based on Meredith's sale to GMAC.

As to Wardley's second claim, grounded in Meredith's alleged failure to "protect and defend" the Marks as required by Paragraph 16, the district court initially refused to dismiss Wardley's claims that relied on that language. After granting Meredith's motion for reconsideration, however, it looked to Paragraph 18, which states that "[a]fter termination, expiration, transfer, or assignment of this Contract for any reason, Member shall cease to have any right to use the

-5-

Marks in any manner." The district court interpreted the language to eliminate all of Wardley's contractual rights following Meredith's sale of the service to GMAC and dismissed the remainder of Wardley's claims.

To the extent that the district court reads Paragraph 18 to imply that Wardley's rights to the Marks terminated against all parties following Meredith's sale of the service to GMAC, we disagree. Such an interpretation would create the possibility of an illusory obligation; we conclude that the most plausible reading of Paragraph 18 is that Wardley's rights to use the Marks would cease only upon transfer or assignment by Wardley. Thus, even following the assignment by Meredith, Wardley had a right to use the Marks; accordingly, the new assignee of the obligations under the contract—GMAC—had an obligation to protect and defend the Marks.

The action before us, however, is a complaint by Wardley not against GMAC, but against Meredith. For us to find Meredith liable for a breach of contract would require the counterintuitive conclusion that Meredith's assignable obligations under the Contract continued as to Meredith even after the transfer of those obligations to GMAC. We draw no such conclusion. Meredith's sale of the service to GMAC included, among other things, an assignment of its obligation to protect and defend the Marks. To the same effect, Wardley conceded at oral argument that GMAC assumed the obligations under the Contract.

Whether GMAC breached its obligation to protect and defend the Marks once it had assumed the obligations under the contract is not before us. (At oral argument it became apparent that Wardley initially took legal action against GMAC and ultimately reached a settlement agreement.) Rather, we must decide whether Meredith breached its contract with Wardley; we conclude that as between Wardley and Meredith, no breach of contract occurred.

Turning to Wardley's claims of breach of the implied covenant of good faith and fair dealing, Utah law recognizes that the covenant of good faith and fair dealing is implied in all contracts to effectuate their terms. See, e.g., Craner v. Northwestern Mut. Life Ins. Co., 12 F. Supp. 2d 1234, 1242 (D. Utah 1998). Thus, "where there is no breach of an express covenant in a contract, there can be no cause of action for breach of an implied covenant arising therefrom." Id. As described above, we have concluded that a breach of contract did not occur in the instant case as between Wardley and Meredith; having so concluded, there can be no breach of the implied covenant of good faith and fair dealing.

**B**

We proceed to the claims based on non-contract theories. With respect to the promissory estoppel claims, Wardley contends that it reasonably relied on Meredith's oral promises; Wardley argues, therefore, that the principles of promissory estoppel compel relief. However, promissory estoppel requires that

-7-

reliance be reasonable, see, e.g., Petty v. Gindy Mfg. Corp., 404 P.2d 30, 32 (Utah 1965); when the alleged promises made are contrary to the terms of the contract, reliance on such promises would be unreasonable. Under the contract before us, Meredith could transfer or assign its rights and obligations. Any reliance on statements that Meredith would never sell, or that its obligations would continue after it assigned the obligations under the contract, would therefore have been unreasonable. We accordingly affirm the district court's dismissal of Wardley's promissory estoppel claims.[1]

As to Wardley's claims of negligent misrepresentation and fraud, such claims are not cognizable under Utah law when they are based on the allegations that are the gravamen of the contract claim, see Craner, 12 F. Supp. 2d at 1242; a claim exists only if an independent breach of a duty is alleged. See, e.g., Beck v. Farmers Ins. Exchange, 701 P.2d 795, 801 n.3 (Utah 1985). Once more, however, reasonable reliance is a necessary element of any claim of negligent misrepresentation or fraud, and as discussed above, any reliance upon representations that Meredith would never sell or that it would continue to assume obligations after it assigned the obligations under its contract would have been unreasonable. Thus, we affirm the district court's dismissal of the negligent

---

[1] Wardley contends that in the unlikely event of a finding that no contract exists, it should have a remedy in the doctrine of unjust enrichment. Because we conclude that a contract existed, we affirm the dismissal of this claim.

misrepresentation and fraud claims.

## III

Finally, Wardley appeals the district court's decision to grant reconsideration of its initial refusal to dismiss Wardley's claims based on the "protect and defend" language. We review a district court's grant of a motion for reconsideration for an abuse of discretion; under that standard, we "will not reverse unless the trial court has made an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." Weitz v. Lovelace Health System, Inc., 214 F.3d 1175, 1181 (10th Cir. 2000) (quotation omitted). On the record before us, we cannot conclude that the district court abused its discretion in granting Meredith's motion for reconsideration. Accordingly, we **AFFIRM**.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge