2011 UT 66

**David ANDERSON and Kristine Anderson, Plaintiffs and Petitioners,**

v.

**Matthew KRISER, Defendant and Respondent.**

No. 20091032.

Supreme Court of Utah.

Oct. 25, 2011.

Stephen Quesenberry, Jessica Griffin Anderson, Provo, Charles L. Perschon, Salt Lake City, for plaintiffs.

Robert L. Jeffs, Randall L. Jeffs, Provo, for defendant.

Associate Chief Justice DURRANT, opinion of the Court:

## INTRODUCTION

¶ 1 In 2004, David and Kristine Anderson purchased an undeveloped lot of land from

Country Living Development, L.C. (Country Living), located in a subdivision owned and developed by Country Living. After constructing a home on the lot and moving into it, the Andersons began to notice several structural problems, including large cracks in the home's flooring and window frames. A short time later, the Andersons learned that these problems had resulted from excessive settling caused by unstable soil beneath their home's foundation.

¶ 2 The Andersons subsequently filed a lawsuit against Matthew Kriser, an employee and shareholder of Country Living, for fraudulent nondisclosure. Sometime after the Andersons initiated their suit, Mr. Kriser filed a motion for summary judgment, which the district court granted.

¶ 3 The Andersons appealed the district court's grant of summary judgment to the Utah Court of Appeals. The court of appeals affirmed the district court's decision after concluding that the Andersons had failed to demonstrate that Mr. Kriser had actual knowledge of the unstable soil beneath the Andersons' home.[1] In dicta, the court of appeals also stated that "[b]ecause [Mr.] Kriser did not construct the Andersons' home," the law imposed no duty on him.[2] In support of this conclusion, the court of appeals stated that "[i]t is clear from *Smith v. Frandsen*, that ultimate responsibility for the settling and other damage to the Andersons' house lies" not with Mr. Kriser, but "with the builder-contractor who actually constructed it."[3]

¶ 4 On certiorari, we must resolve two issues. First, we must determine whether the court of appeals erred in concluding that a plaintiff must demonstrate that a defendant had actual knowledge of undisclosed information in order to prevail on a claim for fraudulent nondisclosure. Second, we must decide whether the court of appeals erred in stating that our opinion in *Smith* makes it "clear" that the law imposed no duty on Mr. Kriser because he did not construct the Andersons' home.

¶ 5 We first hold that the court of appeals correctly concluded that a plaintiff must demonstrate that a defendant had actual knowledge of undisclosed information in order to satisfy the second element of a claim for fraudulent nondisclosure. Thus, because the Andersons have failed to set forth any evidence demonstrating that Mr. Kriser actually knew of the soil conditions below their home, we affirm the district court's grant of summary judgment in favor of Mr. Kriser.

¶ 6 Additionally, to avoid future confusion, we clarify that our holding in *Smith* does *not* support the court of appeals' conclusion that the law imposed no duty on Mr. Kriser to disclose information to the Andersons simply because he did not construct the Andersons' home.

## BACKGROUND

¶ 7 In 1997, Country Living began developing a thirteen-acre residential subdivision (the Development) in Pleasant Grove, Utah. As part of the Development's plat-approval process, Pleasant Grove required Country Living to obtain a geotechnical soil investigation of the property. To comply with this requirement, Country Living hired Earthtec Engineering, P.C. (Earthtec) to conduct a soil study.

¶ 8 After concluding its investigation, Earthtec prepared a report of its findings (the Report). In its conclusions section, the Report indicated that the soils throughout the Development varied and that some areas contained "slightly collapsible soils." The Report then provided recommendations concerning site grading, "appropriate foundation types, floor slabs, and pavement design." Once Earthtec completed the Report, it sent a copy of the Report to Mr. Kriser's brother, who was also an employee of Country Living. Despite the existence of the Report, Mr. Kriser later testified that he never saw it.

¶ 9 Approximately two months after the Report was completed, the Andersons approached Mr. Kriser and inquired about purchasing an undeveloped lot in the Develop-

---

1. *Anderson v. Kriser,* 2009 UT App 319U, para. 5, 2009 WL 3674533.

2. *Id.* para. 6.

3. *Id.* (citation omitted).

ment.[4] Sometime later, the Andersons signed a real estate purchase contract in which they agreed to buy a lot in the Development (Lot 2) for $54,400. Mr. Kriser signed the agreement, placing only his name—and no reference to Country Living—on the line requiring the seller's signature.

¶ 10 In June 1998, the transaction closed, and Lot 2 was conveyed by Country Living to the Andersons via warranty deed. Mr. Kriser signed the warranty deed with his name and indicated that he was doing so as "Manager" for Country Living. At no time prior to closing did Country Living, or Mr. Kriser, inform the Andersons of the presence of collapsible soil in the Development or provide them with a copy of the Report.

¶ 11 After the sale closed, the Andersons hired Mr. Anderson's father to build a home for them on Lot 2.

¶ 12 Several years after moving into their home, the Andersons began to notice numerous structural problems, including cracks in the home's flooring, walls, and window frames. Sometime after discovering these problems, the Andersons obtained a copy of the Report that had been prepared by Earthtec and given to Country Living in December 1997.

¶ 13 Upon learning of the Report, the Andersons filed a lawsuit against Mr. Kriser in his individual capacity. In their complaint, the Andersons alleged that Mr. Kriser *knew* of the Report and of its contents and that he had fraudulently concealed the existence of collapsible soils in the Development.

¶ 14 In response to the Andersons' complaint, Mr. Kriser filed a motion for summary judgment. In his motion, Mr. Kriser contended that he had acted as an agent for Country Living during his interactions with the Andersons and that he therefore could not be held personally liable to the Andersons. He also argued that, even if he could be held personally liable, the Andersons had failed to satisfy the second

element of a fraudulent nondisclosure claim. Specifically, Mr. Kriser asserted that such a claim requires that a defendant have *actual* knowledge of the information that the defendant allegedly failed to disclose.

¶ 15 After conducting a hearing on the motion, the district court granted summary judgment in favor of Mr. Kriser. In so doing, the court concluded that the Andersons had "failed to provide any evidence that [Mr. Kriser] *knew* that the real property in question had collapsible soils unsuitable for the construction of a residence."

¶ 16 The Andersons appealed the district court's grant of summary judgment to the Utah Court of Appeals. In their brief to the court of appeals, the Andersons stated that "[t]he only issue on appeal was whether [Mr. Kriser] knew about the ... Report." They further clarified that the issue on appeal was "not ... whether [Mr. Kriser] owed a duty to disclose the ... Report."

¶ 17 After narrowing the scope of the issues raised on appeal, the Andersons argued that the district court had erred in granting summary judgment because they had introduced evidence that Mr. Kriser had actual knowledge of the contents of the Report. Additionally, the Andersons argued that, even if Mr. Kriser did not have actual knowledge of the Report, knowledge of the presence of collapsible soils could be imputed to him because he is a developer.

¶ 18 The court of appeals rejected these arguments. Specifically, the court of appeals concluded that the Andersons had failed to satisfy the second element of a fraudulent nondisclosure claim, which requires a plaintiff to demonstrate that "nondisclosed information is known to the party failing to disclose [it]."[5] In support of this conclusion, the court of appeals noted that Mr. Kriser had "provided affidavit evidence that at the time of the sale he did not know about any soils testing that addressed [Lot 2's] suitability for housing construction and ... [that he]

---

4. There is some dispute among the parties as to whether Mr. Kriser was acting in his individual capacity or as an agent for Country Living in his dealings with the Andersons. Because it is unnecessary to our resolution of this appeal, we decline to address this issue.

5. *Anderson v. Kriser*, 2009 UT App 319U, para. 3, 2009 WL 3674533 (internal quotation marks omitted).

had not seen the [R]eport."[6] The court of appeals also stated that, even if Mr. Kriser knew that Country Living had a general practice of obtaining soils reports, "[s]uch a theory of knowledge" would not support a claim for fraudulent nondisclosure.[7]

¶ 19 Additionally, despite the Andersons' narrow articulation of the issues raised on appeal, the court of appeals stated in dicta that "[i]t is clear from *Smith v. Frandsen,* that ultimate responsibility for the settling and other damage to the Andersons' house lies with the builder-contractor who actually constructed it."[8] Thus, "[b]ecause [Mr.] Kriser did not construct the Andersons' home," the court of appeals concluded that he did not have a duty to communicate material information to the Andersons.[9]

¶ 20 After the court of appeals affirmed the district court's decision, the Andersons filed a petition for certiorari, which we granted. On certiorari, the Andersons contend that the court of appeals erred in concluding that a developer must have actual knowledge of the contents of a soils report in order to be held liable for fraudulent nondisclosure. They also argue that the court of appeals erred in stating that the "ultimate responsibility for the settling and other damage to the Andersons' house lies with the builder-contractor who actually constructed it." In opposition, Mr. Kriser argues that the court of appeals correctly concluded that the second element of a fraudulent nondisclosure claim requires a showing of actual knowledge of the information that the defendant failed to disclose. Accordingly, because the Andersons have failed to offer any evidence

demonstrating that he actually knew of the Report, Mr. Kriser argues that the court of appeals' decision should be affirmed. We have jurisdiction to hear this appeal pursuant to section 78A–3–102(3)(a) of the Utah Code.

## STANDARD OF REVIEW

¶ 21 "On certiorari, we review the decision of the court of appeals for correctness."[10]

## ANALYSIS

### I. THE COURT OF APPEALS CORRECTLY CONCLUDED THAT TO SATISFY THE SECOND ELEMENT OF A CLAIM FOR FRAUDULENT NONDISCLOSURE, A PLAINTIFF MUST PROVE THAT A DEFENDANT HAD ACTUAL KNOWLEDGE OF THE INFORMATION THAT THE DEFENDANT FAILED TO DISCLOSE

¶ 22 "To prevail on a claim [for] fraudulent nondisclosure, a plaintiff must prove by clear and convincing evidence that (1) the defendant had a legal *duty* to communicate information, (2) the defendant *knew* of the information he failed to disclose, and (3) the nondisclosed information was *material*."[11] In the instant case, the district court granted Mr. Kriser's motion for summary judgment and dismissed the case after concluding that the Andersons had failed to "provide any evidence that [Mr. Kriser] knew that [Lot 2 contained] collapsible soils." The court of appeals subsequently affirmed the

6. *Id.* para. 4.

7. *Id.* para. 5.

8. *Id.* para. 6 (citation omitted).

9. *Id.*

10. *Pyper v. Bond,* 2011 UT 45, ¶ 13, 258 P.3d 575 (internal quotation marks omitted).

11. *Hess v. Canberra Dev. Co.,* 2011 UT 22, ¶ 29, 254 P.3d 161. We recognize that in Utah the elements for fraudulent nondisclosure are essentially the same as those for fraudulent concealment. *Compare id.* (listing the elements for fraudulent nondisclosure as (1) a legal duty to communicate, (2) knowledge of information not

disclosed, and (3) materiality of the nondisclosed information), *and Mitchell v. Christensen,* 2001 UT 80, ¶ 9, 31 P.3d 572 (same), *with Yazd v. Woodside Homes Corp.,* 2006 UT 47, ¶ 35, 143 P.3d 283 (listing the elements for fraudulent concealment as (1) a legal duty to communicate, (2) knowledge of information not disclosed, and (3) materiality of the nondisclosed information), *and Smith v. Frandsen,* 2004 UT 55, ¶ 12, 94 P.3d 919 (same). Accordingly, Utah courts have sometimes used the names of the two causes of action interchangeably. *See, e.g., Yazd,* 2006 UT 47, ¶¶ 8, 35, 143 P.3d 283 (stating that plaintiffs brought a claim for "fraudulent nondisclosure" and then discussing claim as one for "fraudulent concealment").

district court's decision.[12]  In so doing, the court of appeals stated that summary judgment was appropriate because the Andersons had not "presented [any] evidence that [Mr.] Kriser actually knew the contents of the [R]eport" and had therefore failed to satisfy the second element of a fraudulent nondisclosure claim.[13]

¶ 23 On certiorari, the Andersons do not challenge the court of appeals' conclusion that they failed to present evidence that Mr. Kriser actually knew of the Report or of its contents.  Instead, they contend that the court of appeals erred in concluding that a plaintiff must demonstrate that a defendant had actual knowledge of the information that the defendant failed to disclose to prevail on a claim for fraudulent nondisclosure.  We find this argument unpersuasive.

¶ 24 We have consistently stated that a plaintiff must prove by clear and convincing evidence that the defendant *knew* of the information that the defendant failed to disclose to satisfy the second element of a fraudulent nondisclosure claim.[14]  But we have not previously addressed whether satisfaction of this element requires a showing of actual, or merely constructive, knowledge.[15]

Other jurisdictions, however, have consistently recognized that in an action alleging fraudulent nondisclosure, the allegedly defrauded party must demonstrate that the alleged defrauders had actual, not merely constructive, knowledge of the undisclosed fact.[16]  For instance, the Minnesota Supreme Court noted in *Boubelik v. Liberty State Bank* that "[w]hen a concealed fact is not peculiarly within a defendant's knowledge ... the failure to disclose that fact does not amount to fraud." [17]  We agree with these jurisdictions.

¶ 25 When a defendant fails to disclose material information to a plaintiff, the plaintiff may seek damages from the defendant under a variety of legal theories.[18]  For instance, the plaintiff may claim that the defendant was negligent in failing to disclose the information, or, as in this case, the plaintiff may claim that the defendant's nondisclosure amounted to fraud.[19]  The essential difference between a claim for negligence, or negligent nondisclosure, and a claim for fraud, or fraudulent nondisclosure, is the mental state of the defendant that the plaintiff must establish in order to prevail.[20]  This is because "[f]raud is [an intentional tort

---

12. *Anderson v. Kriser*, 2009 UT App 319U, para. 7, 2009 WL 3674533.

13. *Id.* para. 4.

14. *See, e.g., Hess*, 2011 UT 22, ¶ 29, 254 P.3d 161; *Mitchell*, 2001 UT 80, ¶ 9, 31 P.3d 572.

15. Actual knowledge is defined as "direct and clear knowledge" or "actual awareness" of facts or information. BLACK'S LAW DICTIONARY 950 (9th ed.2009).  Constructive knowledge is defined as "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Id.*

16. *See, e.g., Northrop Corp. v. Gen. Motors Corp.*, 807 N.E.2d 70, 87–88 (Ind.Ct.App.2004) (recognizing that in fraudulent nondisclosure claims, "[i]t is a question of fact for a jury to determine ... whether the defendant had *actual knowledge* of the undisclosed fact" (emphasis added)); *Davis v. Dawson, Inc.*, 15 F.Supp.2d 64, 137 (D.Mass.1998) ("Fraudulent nondisclosure may ... occur where, for example, [a] seller sold and designed a product to include a particular part, had *actual knowledge* that the part had not been installed in the product sold to the buyer and, knowing that the part was missing, knew that it

was responsible for the product's malfunction." (emphasis added)); *Myre v. Meletio*, 307 S.W.3d 839, 843–44 (Tex.App.2010) (requiring a party have actual knowledge of a fact he failed to disclose in order to be guilty of fraudulent nondisclosure).

17. 553 N.W.2d 393, 400 (Minn.1996), *superseded by statute*, 1997 Minn. Laws 965, *as recognized in Ly v. Nystrom*, 615 N.W.2d 302 (Minn.2000).

18. *See, e.g., Smith*, 2004 UT 55, ¶ 9, 94 P.3d 919.

19. *See id.*

20. *See Field v. Boyer Co.*, 952 P.2d 1078, 1083 (Utah 1998) (Stewart, J., concurring in part and dissenting in part) ("Intentional tortious conduct has always been deemed to be categorically different from nonintentional tortious conduct.  Intentional torts generally require an intent or purpose to harm another.  Unintentional torts do not involve an intent or purpose to harm; they involve carelessness or indifference." (footnote omitted)); *see also Moore v. Smith*, 2007 UT App 101, ¶ 36 n. 12, 158 P.3d 562 ("[T]he facts required to prove both negligent misrepresentation and fraudulent concealment are similar, and the only difference between the two claims is a lesser

involving a] malfeasance, a positive act resulting ordinarily from a willful intent to deceive; [while] negligence is [an unintentional tort involving] strictly nonfeasance, a wrongful act resulting from inattention, but not from design."[21] Because negligent nondisclosure is an unintentional tort, a plaintiff is not required to demonstrate any wrongful intent on the part of the defendant.[22] Instead, the fundamental question in a claim for negligence, or negligent nondisclosure, is whether a defendant, who had a duty to disclose information, "should have known" of the information that the defendant failed to disclose, "regardless of what the defendant actually knew."[23]

¶ 26 In contrast, fraudulent nondisclosure is an intentional tort—"[a type of] tort committed by someone acting with general or specific intent."[24] Although intent is the hallmark of an intentional tort, fraudulent intent is often difficult to prove by direct evidence.[25] Because of this difficulty, fraudulent intent is often inferred based on the totality of the circumstances in a case.[26] For instance, fraudulent intent may be inferred for purposes of a fraudulent nondisclosure claim when a plaintiff demonstrates that a defendant had actual knowledge of a material fact and that the defendant failed to disclose that fact. But when a defendant does *not*

have actual knowledge of a nondisclosed fact, it is both unreasonable and illogical to infer that the defendant intended to conceal that fact.[27] Indeed, permitting a plaintiff to state a claim for fraudulent nondisclosure without proving actual knowledge on the part of the defendant would allow a plaintiff to convert merely negligent acts into fraudulent acts. Thus, to maintain the distinction between negligent nondisclosure and fraudulent nondisclosure, and to clarify our existing precedent, we hold that a plaintiff must demonstrate that a defendant had *actual knowledge* of the fact that the defendant failed to disclose to satisfy the second element of a fraudulent nondisclosure claim.

¶ 27 The Andersons contend that requiring a showing of actual knowledge conflicts with our decisions in *Smith v. Frandsen*[28] and *Loveland v. Orem City Corp.*[29] In *Loveland,* the plaintiff brought a claim for negligence against a developer.[30] In *Smith,* the plaintiff brought claims against the developer for negligence and fraud.[31] Because both negligence and fraud claims require a plaintiff to demonstrate that the defendant had a duty to communicate information,[32] we began our analyses in these cases by determining what general duties are owed by developers of land to their purchasers.[33] In resolving this question, we quoted a statement from

mental state for negligent misrepresentation...."). 

21. 37 Am.Jur.2d *Fraud and Deceit* § 16 (2011).

22. *See Field,* 952 P.2d at 1083 ("Unintentional torts do not involve an intent or purpose to harm; they involve carelessness or indifference.").

23. *Receivables Purchasing Co. v. Eng'g & Prof'l Servs., Inc.,* 510 F.3d 840, 843 (8th Cir.2008).

24. Black's Law Dictionary 1626.

25. *See, e.g., United States v. Mann,* 884 F.2d 532, 535 (10th Cir.1989) ("Often ... fraudulent intent is not susceptible of proof by direct evidence.").

26. *See, e.g., State v. Leonard,* 707 P.2d 650, 655 (Utah 1985) ("[C]ircumstantial evidence may [be used to] show fraudulent intent."); *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1375 (10th Cir.1996) (stating that fraudulent intent may be inferred based on the "totality of the circumstances" (internal quotation marks omitted)).

27. *See Denver Bus. Sales Co. v. Lewis,* 148 Colo. 293, 365 P.2d 895, 898 (1961) ("In an action based on fraud, which generally involves a corrupt motive, one cannot be held liable for concealing a condition concerning which he had no knowledge.").

28. 2004 UT 55, 94 P.3d 919.

29. 746 P.2d 763 (Utah 1987).

30. *Id.* at 765.

31. *See* 2004 UT 55, ¶ 1, 94 P.3d 919.

32. *See, e.g., id.,* 2004 UT 55, ¶ 9, 94 P.3d 919 ("Appellants seek compensatory and punitive damages against [Appellee] under three different theories of liability: negligent misrepresentation, negligence, and fraudulent concealment. In order to prevail under any of these causes of action, a plaintiff must demonstrate the existence of a duty running between the parties.").

33. *See id.* ¶ 16; *Loveland,* 746 P.2d at 768–69.

*Anderson v. Bauer*,[34] a negligence case decided by the Wyoming Supreme Court, articulating the various duties owed by developers of land.[35] Specifically, in *Loveland* we quoted a portion of *Bauer* stating that "where land is subdivided and sold for purposes of constructing residential dwelling houses, the developer ... *must disclose to his purchaser any condition which he knows or reasonably ought to know makes the subdivided lots unsuitable for such residential building.*"[36] After quoting this statement, we concluded, in both cases, that the defendants did not have a duty to communicate information to the plaintiffs.[37] Therefore, in *Smith*, because the first element of the plaintiff's fraud claim was not satisfied, we did not address the second element of such a claim or the showing that must be made to satisfy that element.

¶ 28 The Andersons contend that the "reasonably ought to know" language in *Smith* and *Loveland* supports their argument that constructive knowledge is sufficient to satisfy the second element of a fraudulent nondisclosure claim. But as previously discussed, "[i]n an action based on fraud, which generally involves a corrupt motive, one cannot be held liable for concealing a condition concerning which he had no knowledge."[38] Accordingly, "[t]he rule applicable to certain negligence cases[,] which imposes liability for acts of omission or commission which might have been averted by the exercise of [reasonable] prudence in ascertaining the existence of a fact or condition, has no application to cases based on fraud and deceit."[39] We therefore reject the Andersons' interpretation of our statements in *Smith* and *Loveland*. In quoting from *Bauer*, we did not intend to establish a precedent that liability for fraudulent nondisclosure could be established without proof of actual knowledge of the fact allegedly concealed. Thus, to the extent that there

is any ambiguity, we take this opportunity to clarify that the "should have known" language quoted from *Bauer* is applicable only to claims for negligence, or negligent nondisclosure, and is not applicable to claims for fraudulent nondisclosure.

¶ 29 In sum, we hold that the second element of a fraudulent nondisclosure claim— the knowledge element—requires a plaintiff to prove by clear and convincing evidence that the defendant had actual knowledge of the information that the defendant failed to disclose. Accordingly, because the Andersons have failed to put forth any evidence demonstrating that Mr. Kriser actually knew of the soil conditions below their home, we affirm the court of appeals' conclusion that summary judgment was appropriate in this case.

## II. THE COURT OF APPEALS ERRED IN RELYING ON OUR HOLDING IN *SMITH* TO REACH ITS CONCLUSION THAT MR. KRISER HAD NO DUTY TO DISCLOSE INFORMATION TO THE ANDERSONS SIMPLY BECAUSE HE DID NOT CONSTRUCT THEIR HOME

¶ 30 Although our resolution of the issue discussed above is dispositive of the case before us, we take this opportunity to clarify that our holding in *Smith v. Frandsen* does not support the court of appeals' conclusion that the law imposed no duty on Mr. Kriser to disclose information to the Andersons simply because he did not construct the Andersons' home.

¶ 31 In *Smith*, we rejected a remote purchaser's attempt to impose a duty on a developer of a subdivision.[40] In that case, the defendant developed and subdivided a large

---

34. 681 P.2d 1316 (Wyo.1984).

35. *See Smith*, 2004 UT 55, ¶¶ 15–16, 94 P.3d 919; *Loveland*, 746 P.2d at 769.

36. *Loveland*, 746 P.2d at 769 (quoting *Bauer*, 681 P.2d at 1323); *see also Smith*, 2004 UT 55, ¶ 16, 94 P.3d 919 (quoting same language from *Loveland* ).

37. *See Smith*, 2004 UT 55, ¶ 28, 94 P.3d 919; *Loveland*, 746 P.2d at 770.

38. *Denver Bus. Sales Co.*, 365 P.2d at 898.

39. *Id.* (third alteration in original) (internal quotation marks omitted).

40. *Smith v. Frandsen*, 2004 UT 55, ¶¶ 3–5, 94 P.3d 919.

piece of property.[41] The defendant then conveyed the property to a second developer.[42] The second developer subsequently conveyed an undeveloped lot in the development to a contractor, who later built a home on the lot.[43] After completion of the home, the contractor sold the lot to the Smiths—the appellants in the case.[44] After the Smiths moved into the home, the home experienced several structural problems that resulted from "significant settlement of the house, its footings, foundations, and structure."[45] Sometime thereafter, the Smiths filed a claim for fraudulent concealment against the initial developer.[46]

¶ 32 In addressing the Smiths' fraudulent concealment claim, we began by noting that the central question in the case was whether the defendant—the initial developer—"owed a duty to disclose the nature and existence of any subsurface defects, not only to its immediate successors in title, ... but also to the subsequent and more remote purchasers, the Smiths."[47] We then explained that "[w]here a developer conveys property to a residential contractor, the knowledge and expertise of the [contractor], and the independent duties owed thereby, interrupt certain obligations running from the initial developer to subsequent purchasers."[48] Accordingly, because the defendant—the initial developer—had conveyed his property to another developer, we held that the defendant owed no duty to remote purchasers, including the Smiths.[49]

¶ 33 In the instant case, the court of appeals stated that "[i]t is clear from *Smith v. Frandsen*, that ultimate responsibility for the settling and other damage to the Andersons' house lies with the builder-contractor who actually constructed it."[50] The court of appeals therefore surmised that the law imposed no duty on Mr. Kriser to disclose material information to the Andersons because he did not build the Andersons' home.[51]

¶ 34 But contrary to the court of appeals' statement, in *Smith* we did not address the duties owed by a developer who sells property directly to a nondeveloper, who then subsequently hires a third-party builder to construct a home on the property. Instead, we addressed only the duties that an initial developer of land owes to remote purchasers of property when the initial developer has directly conveyed his property to another developer.[52]

¶ 35 Unlike the plaintiffs in *Smith*, the Andersons purchased Lot 2 directly from Mr. Kriser. Thus, our discussion of a developer's duty to remote purchasers in *Smith* is not relevant to the determination of whether Mr. Kriser owed the Andersons a duty to communicate the information contained in the Report. Accordingly, because the facts of this case are distinguishable from the facts at issue in *Smith*, we note that the court of appeals erred in stating that our opinion in *Smith* makes clear that Mr. Kriser owed no duty to the Andersons.[53]

## CONCLUSION

¶ 36 We hold that a plaintiff must demonstrate that a defendant had actual knowledge of undisclosed information to satisfy the second element of a fraudulent nondisclosure claim. Accordingly, because the Andersons have failed to set forth any evidence demon-

41. *See id.*

42. *See id.*

43. *See id.* ¶¶ 3–4.

44. *See id.* ¶ 4.

45. *Id.* ¶ 5.

46. *See id.* ¶ 9.

47. *Id.* ¶ 13.

48. *Id.* ¶ 21.

49. *See id.*

50. *Anderson v. Kriser*, 2009 UT App 319U, para. 6, 2009 WL 3674533 (citation omitted).

51. *See id.*

52. *See Smith*, 2004 UT 55, ¶ 21, 94 P.3d 919.

53. Because it is not directly before us, and because it is unnecessary to our resolution of this case, we decline to address the question of whether a developer who sells undeveloped land has a different duty to disclose information than the duty owed by a builder-developer, and we leave that issue to be resolved in a more appropriate case.

strating that Mr. Kriser actually knew of the soil conditions below their home, we affirm the court of appeals' decision upholding the district court's grant of summary judgment in favor of Mr. Kriser.

¶ 37 Additionally, to avoid future confusion, we clarify that our holding in *Smith* does *not* support the court of appeals' conclusion that the law imposed no duty on Mr. Kriser to disclose information to the Andersons simply because he did not construct the Andersons' home.

¶ 38 Chief Justice Durham, Justice Parrish, Justice Nehring, and Justice Lee concur in Associate Chief Justice Durrant's opinion.