2013 UT App 250

# THE UTAH COURT OF APPEALS

ALEXANDER RICHARDS,
Plaintiff and Appellant,

*v.*

LINDA PETERSON COOK, GAYLE BENDINELLI, AND THE CLARENCE R.
PETERSON REVOCABLE TRUST,
Defendants and Appellees.

Memorandum Decision
No. 20120764-CA
Filed October 18, 2013

Second District Court, Ogden Department
The Honorable Michael D. DiReda
No. 100902475

Brandon R. Richards and Jason B. Richards,
Attorneys for Appellant
Keith M. Backman, Attorney for Appellees

JUDGE JAMES Z. DAVIS authored this Memorandum Decision, in
which JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN
concurred.

DAVIS, Judge:

¶1     Alexander Richards appeals the trial court's grant of
Defendants' motion for involuntary dismissal of Richards's breach
of contract and fraudulent nondisclosure claims. We affirm.

¶2     In 2009, Raul Barrios made an offer to buy a house owned
by Defendants. When Barrios was unable to obtain financing, his
wife's cousin, Richards, agreed to finance the purchase in his own
name. Barrios and his family planned to live in the house, maintain
it, and make payments on the loan. While inspecting the house,
Barrios and his real estate agent observed that the linoleum floor in

the basement of the house exhibited signs of warping and bubbling. They also thought it was odd that a sub-floor had been installed in the basement[1] and were concerned that the sub-floor might conceal water damage. Defendants' disclosures indicated that there was some water seepage from a leaky toilet, but Defendants did not disclose the existence of any other water problems in the house. One of the defendants, Gayle Bendinelli, later testified that she was not aware of any water leaks apart from the toilet during the thirty-six years she lived in the house and that she did not know why her father, who passed away in 2006, had installed the sub-floor. Barrios hired a home inspector[2] to do a "visual inspection" of the basement, and the inspector concluded that although "he didn't know" whether there was a water problem, he "couldn't see any water that was visible" and detected no "dampness smell." Despite these concerns, Richards and Defendants entered into a real estate purchase contract (REPC) and closed on the house in August 2009. Richards himself was unaware of "any concerns or problems or issues with the house" prior to closing.

¶3　　After the purchase was finalized, Barrios began remodeling the basement of the house and discovered extensive water damage beneath the sub-floor and behind the paneling on the walls. He also discovered that water from the outdoor sprinkler system had been leaking into the basement through a seam in the house's foundation. Richards hired a second home inspector, Michael Fisher, to assess the water damage. Fisher discovered that a land drain system installed on the property had become inoperable and

---

1. Barrios's real estate agent and Michael Fisher, a home inspector, both testified at trial that they had never before seen a sub-floor in a basement on top of a concrete floor.

2. This was not the same home inspector who testified at the trial. *See supra* note 1.

surmised that the leakage had been going on for approximately ten years.

¶4      Richards filed a complaint against Defendants in March 2010, asserting claims of breach of contract and fraudulent nondisclosure. A bench trial was held on April 23, 2012. After Richards presented his case, which included calling one of the Defendants as a witness, Defendants moved for involuntary dismissal pursuant to rule 41(b) of the Utah Rules of Civil Procedure. The trial court granted the motion, finding that Defendants did not have actual knowledge of the water damage and that Richards had failed to exercise due diligence in inspecting the house. The trial court made detailed subsidiary findings in support of this determination. The trial court also awarded Defendants attorney fees in the amount of $18,027.30 in accordance with the provisions of the REPC. Richards appeals.

¶5      Rule 41(b) of the Utah Rules of Civil Procedure provides, "After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant . . . may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief." Utah R. Civ. P. 41(b). A trial court may grant a motion for involuntary dismissal under rule 41(b) "when the trial judge finds that the claimant has either failed to make out a prima facie case or when the trial judge is not persuaded by the evidence presented by the claimant." *Lemon v. Coates*, 735 P.2d 58, 60 (Utah 1987).

> The trial court is not precluded from granting [a rule 41(b)] motion merely because the plaintiff has made out a prima facie case, as it is when ruling upon a . . . motion for a directed verdict in a case tried to a jury. Rather, the rule expressly states that once the motion is made, "[t]he court as trier of the facts may then determine [the facts] and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence."

*Wessel v. Erickson Landscaping Co.*, 711 P.2d 250, 252 (Utah 1985) (second and third alterations in original) (citations omitted) (quoting Utah R. Civ. P. 41(b)). Because the trial court in this case made findings of fact and granted the rule 41(b) motion based on its determination that it was unpersuaded by the evidence, we defer to the court's decision insofar as its findings are not clearly erroneous.[3] *See Lemon*, 735 P.2d at 60 (explaining that because it is the trial court's prerogative when acting as the trier of fact in a bench trial to assess credibility and make factual findings, we review a dismissal pursuant to rule 41(b) for clear error); *Petty v. Gindy Mfg. Corp.*, 404 P.2d 30, 31 (Utah 1965) (explaining that where "the trial court granted [the] defendant's motion to dismiss and

---

3. Richards asserts that *Bair v. Axiom Design, LLC*, 2001 UT 20, 20 P.3d 388, requires that we review the court's decision for correctness and consider only whether the evidence he presented meets the initial threshold of making out a prima facie case "in the absence of contrary evidence." *See id.* ¶ 14. While the trial court did state that Richards had failed to make out a prima facie case on each of his claims, its decision is stated in terms of Richards's failure to "establish" certain factors rather than his failure to present evidence pertaining to those factors. The court made extensive findings of fact, weighed the evidence based on the applicable burden of proof for each claim, and even observed that it considered one of the claims to present a "close[] question for the court." This is not the type of analysis undertaken in examining only the existence of a prima facie case but is a discussion of the persuasiveness of the evidence. *Bair* recognized that a rule 41(b) motion may be granted not only where a plaintiff fails to make out a prima facie case, but also where the trial court "'is not persuaded by the evidence presented by the claimant'" so long as the trial court makes findings explaining why the court found the evidence unpersuasive. *Id.* ¶¶ 12, 19–20 (quoting *Lemon v. Coates*, 735 P.2d 58, 60 (Utah 1987)). This is precisely what the trial court did here. Thus, we review the trial court's decision under a clearly erroneous standard rather than a correctness standard.

elected to make findings as authorized by Rule 41(b) . . . we review the evidence in the light most favorable to the findings").

¶6    In order to prove fraudulent nondisclosure, a plaintiff must demonstrate by clear and convincing evidence, *see Anderson v. Kriser*, 2011 UT 66, ¶ 22, 266 P.3d 819, that "(1) there is a legal duty to communicate information, (2) the nondisclosed information is known to the party failing to disclose, and (3) the nondisclosed information is material," *Yazd v. Woodside Homes Corp.*, 2006 UT 47, ¶ 35, 143 P.3d 283. A seller's legal duty to disclose is limited to defects "not discoverable by reasonable care." *Mitchell v. Christensen*, 2001 UT 80, ¶ 11, 31 P.3d 572 (citation and internal quotation marks omitted). Moreover, the second element of fraudulent nondisclosure requires actual knowledge on the part of the seller. *See Anderson*, 2011 UT 66, ¶ 24.

¶7    "The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Bair v. Axiom Design, LLC*, 2001 UT 20, ¶ 14, 20 P.3d 388. Richards maintains that Defendants breached the REPC by failing to disclose the existence of the water damage in accordance with paragraph 10.3 of the REPC, which provides, "Seller agrees to . . . disclose in writing to Buyer defects in the Property *known to Seller* that materially affect the value of the Property *that cannot be discovered by a reasonable inspection by an ordinary prudent Buyer . . . .*" (Emphasis added.)

¶8    Thus, both of Richards's causes of action required him to demonstrate that Defendants had actual knowledge of the water damage and that the damage could not have been discovered through his exercise of due diligence in inspecting the house. The trial court found that Richards had failed to establish either of these factors and that he had therefore failed to establish either fraudulent nondisclosure or breach of contract. Richards does not challenge the evidentiary basis for the trial court's factual findings. Rather, Richards attempts to reargue the facts on appeal, asserting

that his inspection of the house was reasonable and that Defendants had actual knowledge of the water damage. We are required to defer to the trial court's findings unless they are clearly erroneous. *See Lemon*, 735 P.2d at 60. Because we see no error in the trial court's findings, and because those findings support a determination that Richards failed to establish essential elements of his claims, the trial court's decision to grant Defendants' rule 41(b) motion is not clearly erroneous.

¶9     The trial court's finding that Defendants did not have actual knowledge of the water damage is supported by Bendinelli's testimony that she was not aware of any water problems apart from the leaky toilet and that she did not know why her father had installed the sub-floor. Although Richards asserts that water damage to the extent of that found in the house "must have been accompanied by smells of rotting wood and mildew" such that anyone living in the house would have been aware of the water damage, neither Barrios nor his real estate agent noticed any smells in the three to five times they visited the house before closing, and the first inspector did not notice any smells when he visited the house. Furthermore, Fisher testified that sewage smells from the leaky toilet could have masked smells from the other water damage and made it difficult for someone living in the house to detect a separate water problem. In light of this evidence, the trial court's finding that Defendants did not have actual knowledge of the water damage was not clearly erroneous.[4]

---

4. Defendants were admittedly aware that some of the linoleum in the basement was "warping, bubbling, or becoming soft," but they believed that this was natural deterioration typical of a forty-year-old linoleum floor and did not suspect that it was the result of water damage. Because the problem with the linoleum was obvious, Defendants did not explicitly disclose it to Richards. Barrios's real estate agent indicated that he was aware of the warping prior to closing and that it was one of the factors that led him and Barrios to hire the first inspector. Thus, the warping is

(continued...)

¶10    The trial court's determination that Richards could have discovered the water damage by using "reasonable care in conducting his due diligence" is also supported by the evidence. Richards did not personally take any steps to ensure that a home inspection was conducted and, at the time of trial, was not even sure whether such an inspection had ever been conducted. In addition to his own observations, Barrios arranged only for a "visual inspection" of the basement after observing the warping in the linoleum and becoming concerned that the sub-floor might have been installed to cover water damage. Although the first inspector conducted no tests and ultimately determined that he did not know whether there was water damage, Barrios and his real estate agent relied on the fact that the inspector could not detect any water damage. Fisher testified at trial, after reviewing pictures of the utility room, that peeling and bubbling evident in the paint on the walls showed "obvious water damage" that would have concerned him as a home inspector and that it would have been evident prior to closing. Fisher testified that if he had conducted the original inspection, he would have "recommend[ed] that [the buyers] negotiate some removal of some wall board to expose some framing members to dig into a little bit further before purchase." And, as the trial court pointed out, the REPC provided for the buyer to conduct potentially damaging tests in the course of inspections as long as the buyer paid for the damage. Thus, the trial court did not clearly err in finding that there were obvious signs of water damage that would have led a reasonable buyer conducting due diligence to investigate further and eventually uncover the damage. *See Mitchell*, 2001 UT 80, ¶¶ 12–13 (explaining that although "an ordinary prudent person" need not "hire numerous expert home inspectors to search for hidden defects," "inspection by someone with sufficient expertise to appraise [a] defect" may be necessary where the buyer is "put on notice that a possible defect exists").

---

4. (...continued)
something that could have been—and indeed was—discovered through the exercise of due diligence.

¶11     In sum, the trial court found that Richards failed to establish essential elements of his claims, and its findings are supported by the evidence. Accordingly, we affirm the trial court's grant of Defendants' rule 41(b) motion to dismiss. We also affirm the trial court's award of attorney fees,[5] and because Defendants have prevailed on appeal and have complied with rule 24(a)(9) of the Utah Rules of Appellate Procedure, *see* Utah R. App. P. 24(a)(9) (requiring that a party seeking fees on appeal "state the request explicitly and set forth the legal basis for such an award"), we remand for the trial court to calculate an award of fees reasonably incurred on appeal, *see Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998) ("[W]hen a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." (citation and internal quotation marks omitted)).

_____

5. Richards has not challenged the trial court's award of fees apart from arguing that the award should be reversed in conjunction with reversing the trial court's dismissal of his claims. Because we affirm the trial court's dismissal, we need not further evaluate the propriety of the fee award.