**2021 UT 21**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

SHREE GANESH, LLC,
*Appellant,*

*v.*

WESTON LOGAN, INC. AND MATTHEW M. WESTON,
*Appellees.*

No. 20190475
Heard March 10, 2021
Filed June 17, 2021

On Direct Appeal

First District, Logan
The Honorable Kevin K. Allen
No. 170100051

Attorneys:

Troy L. Booher, J. Frederic Voros, Jr., Alexandra Mareschal, Robert G. Crockett, Sarah C. Vaughn, Salt Lake City, for appellant

Brandon J. Baxter, Shawn P. Bailey, Matthew D. Lorz, Logan, for appellees

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS, JUSTICE PEARCE, and JUSTICE PETERSEN joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶1    In this dispute arising out of the sale of hotel property (the Property), Shree Ganesh, a limited liability corporation, brought a number of contract and tort claims against Weston Logan, a corporation, and Mathew Weston, an individual. Each claim stems from Weston Logan's failure to inform Shree Ganesh about Weston Logan's plans to develop a competing hotel across the street from the Property. On summary judgment the district court dismissed these claims because it concluded that, as a matter of law, Weston

Logan did not owe Shree Ganesh any contractual or common-law duties to disclose the information at issue. Because we conclude that the contract between the parties is ambiguous as to Weston Logan's disclosure obligations and because there remains a genuine dispute as to material facts, we reverse the district court's dismissal of Shree Ganesh's contract and tort claims against Weston Logan.

### Background[1]

¶2 In January of 2016, Shree Ganesh, LLC entered into a contract (the Purchase Agreement) with Weston Logan Inc. to purchase Weston Logan's Best Western Inn (the Property) in Logan, Utah. The Purchase Agreement described the Property to be sold as "certain real property . . . located in the City of Logan . . . and more particularly described as . . . [t]he 89 Unit Best Western Plus Weston Inn located at 250 N. Main St."

¶3 Specifically included in the purchase price were all of Weston Logan's "leases, contracts, signage, billboards, all transferable licenses or permits and all hotel inventory (consisting of linens, paper goods, cleaning and operating supplies)" that were "used in the operation of the Property." Additionally, as part of the Purchase Agreement, Weston Logan agreed to "execute any documents required to transfer to [Shree Ganesh] the telephone numbers presently in use by the Hotel, the Best Western Plus Franchise, along with any other business-related services."

¶4 The purchase agreement also contained a provision— Section 8.1—governing Weston Logan's required disclosures. Under Section 8.1, which is titled "Books and Records," Weston Logan was required to disclose, in relevant part, "[a]ll rental agreements, leases, service contracts, insurance policies, latest tax bill(s) and other written agreements, written code violations or other notices which affect the property" and "[t]he operating statements and Federal Tax Returns of the Property."

¶5 Additionally, Section 12 of the Purchase Agreement required Weston Logan to obtain Shree Ganesh's consent before entering into new service or tenant contracts, making "any material

---

[1] Because, at the summary judgment stage, we construe all facts and inferences in "favor of the nonmoving party," we recite the facts in this case in the light most favorable to Shree Ganesh. *USA Power, LLC v. PacifiCorp*, 2010 UT 31, ¶ 65, 235 P.3d 749.

changes to the Property, do[ing] any act, or enter[ing] into any agreements of any kind that *materially changes* the value of the Property."[2]

¶6   At some point after the purchase agreement was signed, Dharmesh Ahir, Shree Ganesh's owner, sent an email to Wesley Christensen, Weston Logan's real estate agent, requesting a price reduction on the sale of the Property based on the fact that three new hotels would soon enter the Logan hotel market. Mr. Christensen responded by attaching a document entitled "STR Supply Pipeline for Utah" and stating, presumably in reference to the attached document, that there was not a "single property, not even in the preplanning stage, ever mentioned in Logan." Mr. Christensen then stated that the requested price reduction was "ridiculous" based on Mr. Ahir's "supply claim."

¶7   But during the time in which Weston Logan was in the process of selling the Property to Shree Ganesh, it was also developing another hotel in the Logan hotel market with MMR Investments, LLC. Matthew Weston, a shareholder in both MMR and Weston Logan, represented both companies in this development and also represented Weston Logan in the sale of the Property to Shree Ganesh.

¶8   As part of this development effort—in the same month the parties entered into the Purchase Agreement—Weston Logan purchased an existing Hampton Inn in North Logan with the intent of potentially relocating the Hampton Inn to a new building somewhere in the Logan area. Initially, Weston Logan intended to build the new Hampton Inn with MMR at a site approximately 2.5 miles away from the Property. Shree Ganesh was aware of these plans. But a few months after the purchase agreement was signed, the City of Logan approached Mr. Weston with a proposal to build the new hotel at a site directly across the street from the Property. And before Weston Logan closed with Shree Ganesh, MMR entered into an agreement with the City to purchase the land. Weston Logan never disclosed any plans to build a competing hotel in this new location.

¶9   After the sale of the Property closed, MMR and Weston Logan merged, and Shree Ganesh learned about Weston Logan's plans to build a competing hotel across the street. Because, according

---

[2] (Emphasis added.)

to Shree Ganesh, the construction of a competing hotel across the street significantly reduced the market value of the Property, Shree Ganesh sued Weston Logan for its failure to disclose its plans to develop the competing hotel.

¶10 In response, Weston Logan filed a motion for summary judgment. In its motion, Weston Logan argued that it never discussed partnering with MMR on the site across the street until after Shree Ganesh and Weston Logan closed on the Property. Weston Logan further argued that even if it had, it was not required to disclose its plans to develop the competing hotel under the terms of the Purchase Agreement or under the common law. The district court agreed and granted summary judgment in favor of Weston Logan on all Shree Ganesh's claims. Shree Ganesh appealed. We have jurisdiction under Utah Code section 78A-3-102(3)(j).

**Standard of Review**

¶11 Shree Ganesh argues that the district court erred in granting Weston Logan's motions for summary judgment on Shree Ganesh's contract and tort claims. "We review a grant of summary judgment for correctness."[3] "We give no deference to the district court's legal conclusions and consider whether the court correctly decided 'that no genuine issue of material fact existed.'"[4] And we "review the facts in a light most favorable to the party against whom summary judgment was granted."[5]

**Analysis**

¶12 While selling hotel property to Shree Ganesh, Weston Logan failed to disclose any involvement it had in building a competing hotel across the street. Based on this failure, Shree Ganesh brought a number of contract and tort claims against Weston Logan. But, on summary judgment, the district court dismissed all its claims. We reverse.

¶13 Under rule 56 of the Utah Rules of Civil Procedure, "[s]ummary judgment is appropriate [only] where 'the moving party shows that there is no genuine dispute as to any material fact and the

---

[3] *Heslop v. Bear River Mut. Ins. Co.*, 2017 UT 5, ¶ 15, 390 P.3d 314 (citation omitted).

[4] *Id.* (citation omitted).

[5] *Id.* (citation omitted).

moving party is entitled to judgment as a matter of law.'"[6] So we must review the district court's decision to ensure its legal conclusions were correct, and we must review the record to ensure no genuine and material factual disputes exist.

¶14  The court dismissed Shree Ganesh's contract claims because the court interpreted the Purchase Agreement to not create a contractual duty to disclose the information at issue. Similarly, the court dismissed Shree Ganesh's tort claims because, based on the court's view of the relevant facts in this case, Weston Logan did not breach a common law duty when it failed to disclose the information at issue. We reverse the district court on both counts.

¶15 First, we reverse the district court's dismissal of Shree Ganesh's contract claims because the Purchase Agreement is ambiguous as to whether Weston Logan owed Shree Ganesh a duty to disclose.[7] For this reason, the interpretation of the Purchase Agreement is a question of fact for the fact-finder. Accordingly, the district court erred in granting summary judgment on this issue.

¶16 Second, we reverse the district court's dismissal of Shree Ganesh's tort claims because there remain genuine disputes of material fact as to whether Weston Logan breached a common-law duty owed to Shree Ganesh when Weston Logan failed to disclose the information at issue.

### I. We Reverse the District Court's Dismissal of Shree Ganesh's Breach-of-Contract Claims Because the Purchase Agreement is Ambiguous

¶17 Shree Ganesh argues that Weston Logan breached two provisions of the Purchase Agreement by failing to disclose its plans to build a competing hotel across the street from the Property. The first provision it points to is Section 8.1. Section 8.1, entitled "Books and Records," requires Weston Logan, in relevant part, to disclose "[a]ll rental agreements, leases, service contracts, insurance policies,

---

[6] *Penunuri v. Sundance Partners, Ltd.*, 2017 UT 54, ¶ 14, 423 P.3d 1150 (citing UTAH R. CIV. P. 56).

[7] Because we find summary judgment precluded based on the Purchase Agreement's ambiguity, we do not address Weston Logan's claims that it was not involved in the plans to build the hotel across the street from the Property until after it closed on the Property with Shree Ganesh.

latest tax bill(s) and *other written agreements*, written code violations or other notices *which affect the Property*."[8] Shree Ganesh argues that the language "other written agreements . . . which affect the Property" obligated Weston Logan to disclose any written agreements related to the development of the hotel property across the street because those written agreements affected the market value of the Property.

¶18 In contrast, the district court found that this provision required disclosure only of "agreements that involved, concerned, or bound th[e] real property" being sold. Under this interpretation, the Purchase Agreement did not require disclosure of documents having an "indirect impact on hotel market conditions or the future profitability of the Best Western hotel business."

¶19 This interpretation is based primarily on the court's understanding of how the Purchase Agreement defined the "Property" being sold. According to the court, "the term 'the Property,'" as it is used in the Purchase Agreement, "refers solely to the real property that was sold" and not to the hotel as a business. Although the court's interpretation of the term "Property" may ultimately be the one the parties intended, we disagree that the term's meaning is unambiguous.

¶20 "When we interpret a contract we first look at the plain language [of the contract] to determine the parties' meaning and intent."[9] If the language of the "contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law."[10] But if "a contractual term or provision is ambiguous as to what the parties intended," such that genuine issues of material fact remain, the moving party is not entitled to judgment as a matter of law.[11] Summary judgment is therefore precluded and "the question becomes a question of fact to be determined by the fact-finder."[12] A "contractual term or provision is ambiguous if 'it is capable of more

---

[8] (Emphases added.)

[9] *Brady v. Park*, 2019 UT 16, ¶ 53, 445 P.3d 395 (alteration in original) (citation omitted) (internal quotation marks omitted).

[10] *Id.* (citation omitted) (internal quotation marks omitted).

[11] *Id.*

[12] *Id.*

than one *reasonable* interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies.'"[13] In this case, the term "Property" could reasonably be interpreted in the narrow manner proposed by the district court or in the broader manner proposed by Shree Ganesh.

¶21 As the district court pointed out, the Purchase Agreement defines the property as "that certain real property . . . located in the City of Logan, County of Cache County, State of Utah, and more particularly described as follows: The 89 Unit Best Western Plus Weston Inn located at 250 N. Main St., Logan Utah 84321 with Cache County APN: 06-017-0008." The court focused on the term "certain real property" to conclude that the meaning of "Property" used throughout the Purchase Agreement was clearly untethered from the Property's market value as a site for the operation of a hotel business.

¶22 But although the court is correct that the Purchase Agreement refers to the Property as "certain real property," the court overlooks the significance that the Purchase Agreement more "particularly describe[s]" the Property as the "89 Unit Best Western Plus Weston Inn." This suggests the parties were not concerned with the transfer of real property alone, but with the transfer of real property that would continue to be used for the operation of a Best Western hotel business.

¶23 Other provisions of the Purchase Agreement support this conclusion. For example, in describing what is being purchased, it specifically includes any "leases, contracts, signage, billboards, all transferable licenses or permits and all hotel inventory (consisting of linens, paper goods, cleaning and operating supplies) now in, owned and used in *the operation of the Property*."[14] By categorizing this list of hotel-related items as items "owned and used in the operation of the Property," the Purchase Agreement equates the "Property" with a hotel business. This again suggests that the parties' ultimate aim was not merely to transfer real property, but to transfer property with which Shree Ganesh could operate a successful hotel business.

¶24 Similarly, in Section 8.1(b), the Purchase Agreement requires Weston Logan to disclose the "operating statements and Federal Tax Returns of the Property." In addition to once again equating the term

---

[13] *Id.* ¶ 54 (citation omitted).

[14] (Emphasis added.)

"Property" with a functioning hotel business, this provision expressly requires Weston Logan to disclose the important financial documents related to the operation of that business.

¶25 As these examples from other provisions in the Purchase Agreement demonstrate, the subject of the Purchase Agreement was not solely real estate. Rather it included other things necessary or helpful to Shree Ganesh's continued operation of a Best Western hotel franchise on the Property. With this in mind, we conclude that it is reasonable to interpret the language "other written agreements . . . which affect the Property" contained in Section 8.1 to require disclosure of written agreements that would affect the continued operation of the hotel business. Accordingly, the district court erred in concluding that the meaning of this provision was unambiguous.

¶26 Shree Ganesh also argues that Weston Logan violated Section 12 of the Purchase Agreement. Section 12 states that after Shree Ganesh had removed certain contingencies (thereby nullifying the disclosure requirements in Section 8.1), Weston Logan would be prohibited from "enter[ing] into any new service or tenant contracts that cannot be canceled with 30 days notice and without penalty" and from "mak[ing] any material changes to the Property, do[ing] any act, or enter[ing] into any agreements of any kind that *materially changes the value of the Property* or the rights of [Shree Ganesh] as they relate to the Property," unless Weston Logan first obtains Shree Ganesh's written consent.[15]

¶27 As it did with Shree Ganesh's claim under Section 8.1, the district court dismissed this claim based on its interpretation of the term "the Property," concluding that Weston Logan's "obligation 'to not make any material changes to the Property' simply mean[t] that it could not make material changes to the real property." And it concluded that the "prohibition against 'any act, or . . . agreements of any kind that *materially changes the value of the Property* or the *rights . . . relate[d] to the Property*'" meant that Weston Logan "could not, without [Shree Ganesh's] written consent, engage in any actions or enter into agreements that materially changed the value of the Best Western real property or [Shree Ganesh's] rights related to that real property."

¶28 For the same reason we rejected the district court's conclusion under Section 8.1, we reject it here. The parties clearly

---

[15] (Emphasis added.)

intended to transfer what was necessary to continue the operation of the Property as a hotel business. And based on this understanding, we conclude it is reasonable to interpret Section 12 as prohibiting Weston Logan from engaging in acts that would harm Shree Ganesh's operation of that business. In fact, Section 12 provides additional support for this interpretation by expressly prohibiting actions that would materially change "the *value* of the Property."[16] Accordingly, the court erred in treating this provision as unambiguous.

¶29 Because the district court erred in concluding that Sections 8.1 and 12 are susceptible to only one reasonable interpretation, we reverse the district court's dismissal of Shree Ganesh's contract claims against Weston Logan.[17]

---

[16] (Emphasis added.) We note that even under the district court's accepted meaning of the term "Property," the development of the hotel across the street could reasonably affect the value of the Best Western real property.

[17] Shree Ganesh also requests that we reverse the dismissal of its contract claims against Matthew Weston in his individual capacity. The district court dismissed these claims on summary judgment because, based on its interpretation of the Purchase Agreement, Matthew Weston had not made any personal guarantees or otherwise agreed to be bound in his individual capacity when he signed on behalf of Weston Logan. Upon review of the Purchase Agreement, we agree with the district court. We find the Purchase Agreement unambiguous on this issue, with no genuine issue of material fact remaining to preclude summary judgment. The Purchase Agreement specifically identifies the "Seller" as "Weston Logan, Inc." And Mathew Weston clearly signed on the line marked "Seller." And, contrary to what Shree Ganesh argues, this conclusion is not altered by a provision purporting to bind "heirs, successors, agents, representatives and assigns of the parties." That provision would bind agents only in their role as agents of the contract parties—it does not make the agents parties to the Purchase Agreement nor does it subject them to personal liability.

Additionally, Shree Ganesh asks us to reverse the dismissal of its claim under the implied covenant of good faith and fair dealing. According to Shree Ganesh, even if the Purchase Agreement did not require disclosure, the covenant of good faith and fair dealing did.
(Continued)

## II. We Reverse the District Court's Dismissal of Shree Ganesh's Tort Claims Because There Remain Unresolved Issues of Material Fact

¶30 Shree Ganesh also argues that Weston Logan and Mr. Weston committed the tort of fraudulent nondisclosure by failing to disclose information about their plans to build a competing hotel across the street. To prevail on a claim for fraudulent nondisclosure, a plaintiff must prove three elements: "(1) the defendant had a legal duty to communicate information, (2) the defendant knew of the information . . . , and (3) the nondisclosed information was material."[18] The district court dismissed Shree Ganesh's nondisclosure claim because it concluded that Weston Logan did not breach a legal duty to communicate the information at issue. But, because we conclude that two genuine disputes of fact related to this claim exist, we reverse this determination.

¶31 First, there is a genuine dispute as to whether Weston Logan breached a common-law duty to disclose information about a competing hotel across the street. As the district court noted, we recognized a duty to disclose "material elements" of a property in *Ong International (U.S.A.), Inc. v. 11th Avenue Corp.*[19] In that case we stated that "a seller [of real property] has a duty to represent fairly and accurately the *material elements* of property sold when such elements are not easily ascertainable by the buyer and materially affect the value of the property."[20] Although the district court cited our decision in *Ong*, the court concluded that, as a matter of law, information about the development of a competing hotel across the street could not constitute a material element of the Property. This is incorrect.

---

Because any determination on Shree Ganesh's implied-covenant claim would be premature in light of our determination regarding Shree Ganesh's contract claims, we do not reach the merits of this argument. But, because the district court on remand may want to revisit its implied-covenant decision in connection with Shree Ganesh's contract claims, we also remand for a reconsideration of this issue.

[18] *Anderson v. Kriser*, 2011 UT 66, ¶ 22, 266 P.3d 819 (emphases omitted) (citation omitted).

[19] 850 P.2d 447, 454 (Utah 1993).

[20] *Id.* (emphasis added).

¶32 In *Yazd v. Woodside Homes Corp.*, we explained that to "be material, the information must be 'important.'"[21] And we explained that "[i]mportance, in turn, can be gauged by the degree to which the information could be expected to influence the judgment of a person buying property or assenting to a particular purchase price."[22] In this case, Shree Ganesh provided testimony that information about a competing hotel across the street would have been an important factor in its decision to purchase the Property. So to the extent the district court was suggesting the undisclosed information in this case was indisputably immaterial, we disagree.

¶33 We also disagree with the district court's assertion that the undisclosed information could not constitute an "element" of the Property. Under our case law, the type of information at issue in this case may constitute an element of real property triggering a tort duty to disclose. For example, in *Elder v. Clawson* we recognized that the failure to disclose information that the Agricultural Department had quarantined farm property because of the existence of a noxious weed could form the basis of a fraudulent nondisclosure claim.[23] In that case, the buyer knew of the existence of the weed at the time of the purchase, but the seller did not inform the buyer that the property was quarantined.[24] Based on these facts, we concluded that the seller had committed fraud. So in that case the material element was not the physical defect on the land—the noxious weed. Rather, the material defect was the information affecting the viability of the "economic operation" of the farm—the quarantine imposed by the Agricultural Department.[25]

¶34 Similarly, in *Ong*, we cited *Moschelle v. Hulse*, a Montana case in which the Montana Supreme Court determined that the withholding of information related to a commercial property's "probable business earnings" was deemed to be fraudulent.[26] In a parenthetical description of the *Moschelle* decision, we described the

---

[21] 2006 UT 47, ¶ 34, 143 P.3d 283.

[22] *Id.*

[23] 384 P.2d 802, 803–05 (Utah 1963).

[24] *Id.* at 803.

[25] *Id.*

[26] *See Moschelle v. Hulse*, 622 P.2d 155, 159 (Mont. 1980); *see also Ong*, 850 P.2d at 454 n.24 (citing *Moschelle,* 622 P.2d *at* 159).

case as standing for the proposition that "creating [a] false impression as to [a] matter of vital importance to [the] purchaser amounted to fraud."[27] In so doing, we equated the phrase "material element" with the phrase "matter of vital importance" and we suggested that matters of vital importance could encompass information about a commercial property's "probable business earnings."

¶35  As our discussion of these cases illustrates, our definition of a "material element" of property is not limited to physical defects or conditions on the land. Rather, it encompasses any matter or information that would have been an important factor in a buyer's decision to purchase the real estate. Under this definition, information that could substantially decrease the Property's market value or future economic potential could be deemed (based on the specific facts in the case) a material element. Accordingly, there exists a genuine dispute of material fact as to whether Weston Logan breached its duty to disclose "material elements" of the Property when it withheld information about its plans to build a competing hotel across the street.

¶36  Second, there also exists a genuine dispute of material fact as to whether Weston Logan breached its duty to clarify potentially misleading statements made by its real estate agent. A month or so before the original closing date, Dharmesh Ahir, Shree Ganesh's owner, sent an email to Wesley Christensen, Weston Logan's real estate agent, requesting a price reduction based on the fact that three new hotels would soon enter the Logan market. Mr. Christensen responded by attaching a document titled "STR Supply Pipeline for Utah" and stating, presumably in reference to the attached document, that there was not a "single property, not even in the preplanning stage, ever mentioned in Logan." Mr. Christensen then stated that the requested price reduction was "ridiculous" based on Mr. Ahir's "supply claim." Shree Ganesh argues that Weston Logan committed the tort of fraudulent or negligent nondisclosure because it failed to clarify Mr. Christensen's misleading statement by failing to disclose additional information about Weston Logan's hotel development plans.

¶37  In addressing this claim, the district court noted, correctly, that where a person makes an affirmative statement, that person has

---

[27] *Id.*

a common-law duty to disclose all material facts necessary to prevent that statement from being misleading.[28] Notwithstanding this common-law duty, the district court dismissed Shree Ganesh's claim because, in the court's view, Mr. Christensen's statement was not a misleading statement necessitating the disclosure of additional, clarifying information.

¶38 According to the court, the statement was "an accurate representation of an attached STR report, which did not reference any hotels in the pre-planning stage." Although Shree Ganesh concedes that Mr. Christensen's comments about the report were accurate, Shree Ganesh argues "it is clear that the intention of the email—particularly the 'ridiculous' comment—was to assure Shree Ganesh that there were, in fact, no hotels being planned in the near future, not just that none appeared in the STR report." We conclude that this creates a genuine dispute as to a material fact.

¶39 Mr. Christensen made the statement at issue in response to Mr. Ahir's email inquiring about competing hotel developments in the area. In that email, Mr. Ahir did not ask Mr. Christensen about what was shown in the STR report. Instead, Mr. Ahir's focus was on whether other hotels were in fact being developed in the area. With this context in mind, it is reasonable to conclude that Mr. Christensen's partial statement, which did not directly respond to Mr. Ahir's core concern, was misleading absent the disclosure of other, clarifying information. Accordingly, we conclude there exists a genuine dispute as to whether Weston Logan breached its duty to clarify a potentially misleading and material statement made by its agent concerning the Property.

¶40 Because genuine disputes exist as to whether Weston Logan breached its duties to disclose "material elements" about the Property and to correct misleading affirmative statements, we reverse the district court's grant of summary judgment on Shree Ganesh's tort claims.[29]

---

[28] *First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1330–31 (Utah 1990) (recognizing a common law duty to disclose matters "that [one party] knows to be necessary to prevent [the party's] partial or ambiguous statement of the facts from being misleading") (citing Restatement (Second) of Torts § 551, 119 (1977)).

[29] Shree Ganesh also argues that we should reverse the district court's denial of Shree Ganesh's motion to amend its complaint to
(Continued)

**Conclusion**

¶41 Because we conclude that the Purchase Agreement between the parties is ambiguous as to Weston Logan's disclosure obligations and because there remains a genuine dispute as to material facts relevant to Shree Ganesh's tort claims, we reverse the district court's dismissal of Shree Ganesh's contract and tort claims against Weston Logan.

---

add conspiracy claims against several new defendants. Because the district court may want to revisit this decision on remand in connection with its determinations as to Shree Ganesh's other claims, we also remand for a reconsideration of the denial of the motion to amend. But in so doing, we make no decision regarding the merits of the district court's decision on this issue. Rather our decision is motivated only by the fact that—in light of our other determinations—a decision on the issue at this time would be premature.