**2020 UT App 124**

## THE UTAH COURT OF APPEALS

JODI JENSEN,
Appellant and Cross-appellee,

*v.*

GARY CANNON,
Appellee and Cross-appellant.

Opinion
No. 20190433-CA
Filed August 27, 2020

Third District Court, Salt Lake Department
The Honorable Patrick Corum
No. 160904276

Bruce M. Pritchett Jr. and Robert D. Strieper,
Attorneys for Appellant and Cross-appellee

Julianne P. Blanch, Alissa M. Mellem, and Aaron
Worthen, Attorneys for Appellee and
Cross-appellant

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGE DAVID N. MORTENSEN concurred. JUDGE RYAN M. HARRIS
concurred in part and concurred in the result, with opinion.

POHLMAN, Judge:

¶1     Jodi Jensen and Gary Cannon divorced in March 1998. More than a decade later, Jensen filed an independent action seeking relief from the parties' divorce decree on the basis that Cannon failed to disclose certain assets during the divorce proceedings. The district court largely resolved the dispute in Cannon's favor through summary judgment and a bench trial. In this appeal and cross-appeal, Jensen and Cannon challenge several of the district court's rulings resolving Jensen's claims and denying Cannon's motions. We affirm the challenged rulings.

BACKGROUND

¶2 Jensen and Cannon married in 1987 and divorced in 1998. Before the parties divorced, they entered into a settlement agreement resolving "any and all disputes" regarding "the distribution of real and personal property acquired by them during the course of their marriage" and dividing identified assets. (Cleaned up.) The agreement was incorporated into the divorce decree.

¶3 Some years later, Jensen began to suspect that Cannon had not disclosed all of his assets during the divorce proceedings. She accordingly filed suit against Cannon in 2009, alleging that Cannon had committed fraud in not disclosing certain assets. After several years, that case was dismissed without prejudice by stipulation. In 2016, within one year of the dismissal, Jensen re-filed her complaint, again alleging that Cannon committed fraud by not disclosing certain assets during the divorce proceedings. She subsequently amended her complaint, adding claims for breach of the covenant of good faith and fair dealing, negligent misrepresentation, unjust enrichment, accounting, and fraudulent nondisclosure.

¶4 As relevant here, Jensen alleged that at the time of their divorce, Cannon held an interest in two assets: a 3.89-acre parcel of real property Jensen has identified on appeal as the Riverton Corners property and an option (the Option Agreement) to purchase a different 3.4-acre parcel of land Jensen has identified as the Green property. Jensen claimed that Cannon did not disclose either asset during the divorce proceedings.

¶5 Cannon moved for summary judgment on all Jensen's claims. He argued that Jensen's non-fraud claims should be dismissed because they constituted an "improper[] attempt to modify the divorce decree" and were untimely and improper under rule 60 of the Utah Rules of Civil Procedure. He also

argued that Jensen could not prove her fraud-related claims by clear and convincing evidence. And he requested attorney fees pursuant to Utah Code section 78B-5-825, contending that Jensen's claims both lacked merit and were brought in bad faith.

¶6 The district court granted the motion in part and denied it in part. The court awarded Cannon judgment on some of Jensen's fraud-based claims but concluded that Jensen could "proceed with her [fraud] and [fraudulent nondisclosure] causes of action" with respect to the Riverton Corners and Green properties. The court also dismissed Jensen's claims for breach of the covenant of good faith and fair dealing, negligent misrepresentation, accounting, and unjust enrichment. The court rendered no ruling on Cannon's request for bad faith attorney fees in its summary judgment ruling.

¶7 The case proceeded to a bench trial. At the trial's conclusion, the court determined that Jensen had not carried her burden of proving her fraud claims by clear and convincing evidence. The court stated that the central issue on the fraud claims was whether Cannon knew the Option Agreement and the Riverton Corners property were assets "that he needed to disclose during the divorce." The court found that Cannon credibly testified that he did not know he was required to disclose those assets and that he therefore did not have the intent required for fraud.

¶8 The district court also denied Cannon's request for bad faith attorney fees under Utah Code section 78B-5-825. It determined that the case was "brought in good faith" and on that basis denied the request.

¶9 Finally, the district court also denied a motion filed by Cannon for sanctions against Jensen under rule 11 of the Utah

Rules of Civil Procedure.[1] During the proceedings, Jensen had filed a motion in limine requesting that the court sanction Cannon under rule 37 of the Utah Rules of Civil Procedure for spoliation of the Option Agreement. She asked the court to presume that a physical copy of the Option Agreement once existed and to impose an adverse inference in her favor that had the document been disclosed, it would have shown that Cannon "had an ownership interest in the Green Property during the marriage that was not disclosed." The court denied Jensen's motion.

¶10     In response, Cannon filed a motion requesting that Jensen be sanctioned under rule 11 for filing the spoliation motion, claiming that at the time Jensen filed the motion she did not have, and was not likely to attain, evidentiary support for her contentions. *See* Utah R. Civ. P. 11(b)(3), (c) (providing that, by presenting a motion to the court, the attorney certifies that, having conducted a reasonable inquiry, "the allegations and other factual contentions have evidentiary support or . . . are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery," and that an "appropriate sanction" may be imposed for a violation of subsection (b)). Following trial, the court determined that while there "may not be direct evidentiary support for" the contention that the Option Agreement had been in writing and that Cannon had spoliated the document, "there [were] inferences" supporting the contention, and on that basis denied Cannon's motion.

¶11     Jensen now appeals the district court's conclusion that she failed to prove her fraudulent nondisclosure claim with respect

---

1. We read Cannon's motion for rule 11 sanctions as against Jensen's counsel rather than against Jensen herself. However, the parties on appeal treat the motion as though it were filed against Jensen, and we accordingly follow suit.

to the Option Agreement and the Riverton Corners property. She also appeals the court's dismissal of her non-fraud claims on summary judgment. Cannon cross-appeals, challenging the court's denial of his request for bad faith attorney fees and for rule 11 sanctions based on Jensen's spoliation motion. Cannon also requests attorney fees on appeal under rule 33 of the Utah Rules of Appellate Procedure.

ISSUES AND STANDARDS OF REVIEW

¶12   Jensen first challenges the district court's determination that she did not prove her fraudulent nondisclosure claim regarding the Riverton Corners property and the Option Agreement, arguing that the court misconstrued the elements of the claim. We review a district court's legal conclusions for correctness. *See Reynolds v. MacFarlane*, 2014 UT App 57, ¶ 11, 322 P.3d 755; *see also Nielsen v. Spencer*, 2008 UT App 375, ¶ 10, 196 P.3d 616 (stating that we review issues concerning the elements of a tort claim for correctness).

¶13   Jensen next challenges the district court's dismissal of her non-fraud claims on summary judgment. She argues that the district court erroneously dismissed those claims due to its misinterpretation of rule 60(d) of the Utah Rules of Civil Procedure. Summary judgment should be granted "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). We review a district court's grant of "summary judgment for correctness, viewing the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Penunuri v. Sundance Partners, Ltd.*, 2017 UT 54, ¶ 14, 423 P.3d 1150 (cleaned up). And we review a district court's "interpretation of a rule of civil procedure for correctness." *Lodge at Westgate Park City Resort*

*& Spa Condo. Ass'n Inc. v. Westgate Resorts Ltd.*, 2019 UT App 36, ¶ 18, 440 P.3d 793 (cleaned up).

¶14 On cross-appeal, Cannon challenges the district court's denial of his request for attorney fees under Utah Code section 78B-5-825. Under that section, a court in a civil action "shall award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith." Utah Code Ann. § 78B-5-825(1) (LexisNexis 2018). As relevant here, whether Jensen acted in good faith is a "question of fact," and we review the district court's determination on that point for clear error. *See Bresee v. Barton*, 2016 UT App 220, ¶ 15, 387 P.3d 536 (cleaned up); *see also Rocky Ford Irrigation Co. v. Kents Lake Reservoir Co.*, 2020 UT 47, ¶ 77 (affording a "substantial measure of discretion" to a district court's bad faith finding).

¶15 Finally, Cannon challenges the district court's denial of his motion for sanctions against Jensen under rule 11 of the Utah Rules of Civil Procedure. We review factual findings related to the rule 11 determination for clear error and the court's legal conclusions for correctness. *See Gillmor v. Family Link, LLC*, 2012 UT 38, ¶ 9, 284 P.3d 622; *Westmont Mirador LLC v. Shurtliff*, 2014 UT App 184, ¶ 8, 333 P.3d 369.

ANALYSIS

I. Jensen's Appeal

A. Fraudulent Nondisclosure

¶16 Jensen challenges the district court's determination that she did not prove all the elements of her fraudulent nondisclosure claim by clear and convincing evidence. "To prevail on a claim for fraudulent nondisclosure, a plaintiff must

prove by clear and convincing evidence that (1) the defendant had a legal *duty* to communicate information, (2) the defendant *knew* of the information he failed to disclose, and (3) the nondisclosed information was *material*." *Anderson v. Kriser*, 2011 UT 66, ¶ 22, 266 P.3d 819 (cleaned up); *accord Hess v. Canberra Dev. Co.*, 2011 UT 22, ¶ 29, 254 P.3d 161; *Mitchell v. Christensen*, 2001 UT 80, ¶ 9, 31 P.3d 572.

¶17 In evaluating Jensen's fraudulent nondisclosure claim, the district court determined that the "core issue" regarding the Option Agreement and the Riverton Corners property was whether Cannon knew that they were "asset[s] that he needed to disclose during the divorce." The court found that Cannon credibly testified with respect to both "that he did not know" he needed to disclose them. Regarding the Option Agreement specifically, the court found that Cannon had an "option with the Greens[] to act as their real estate agent," not an option "to purchase and hold the land," and that there was no "clear and convincing evidence that [Cannon] knew [the Option Agreement] was an asset that would require disclosure" where, at the relevant time, "he did not believe the real estate option to have value," given that it "was a potential future interest in land." And for the Riverton Corners property, the court determined that "there was no evidence" that Cannon "intended to deceive" Jensen about the property. The court found that Cannon "convincingly testified" that he "did not view [the property] as something he needed to disclose as an asset" because he did not believe he owned an interest in it.

¶18 Jensen argues that the court "erred when it extended the element of knowledge" beyond mere knowledge of the asset to Cannon's knowledge that "he had to disclose the assets." She faults the court for basing its judgment on Cannon's "testimony that he did not believe he had to disclose" the Option Agreement and the Riverton Corners property rather than on his knowledge of these properties in the abstract. In this respect, she contends

that the relevant issue to prove the fraudulent nondisclosure claim was simply whether Cannon knew of the Option Agreement and the Riverton Corners property, and that it was inappropriate for the court to consider Cannon's subjective belief about whether they were "assets" that needed to be disclosed.[2]

¶19 Jensen's argument has some appeal. After all, in articulating the three-part test applied to fraudulent nondisclosure claims, intent to deceive is not identified as an element of the tort. *See Anderson*, 2011 UT 66, ¶ 22. The test speaks only of duty, knowledge, and materiality. *Id.* And in that respect, the articulation of the tort is similar to constructive fraud, which does not require a showing of intent to deceive. *See Jensen v. IHC Hosps., Inc.*, 944 P.2d 327, 339 (Utah 1997) ("Constructive fraud requires two elements: (i) a confidential relationship between the parties; and (ii) a failure to disclose material facts."); *d'Elia v. Rice Dev., Inc.*, 2006 UT App 416, ¶ 51, 147 P.3d 515 (holding that intent to defraud is not an element of constructive fraud), *holding modified on other grounds by Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, 284 P.3d 630.

¶20 We also recognize that in other jurisdictions, the tort of fraudulent nondisclosure has been described a variety of ways, some of which do not necessarily depend on establishing a fraudulent intent. For example, some courts separately recognize the tort of fraudulent concealment, which requires an intent to

---

2. Jensen also challenges the court's conclusion regarding the duty element of her fraudulent nondisclosure claim. The court determined that Jensen "did not meet her burden of proof in establishing" that Cannon had a duty "to disclose any of the information she claimed he withheld." However, because we ultimately affirm the district court's conclusions with respect to the knowledge element of her claim, we have no need to address Jensen's arguments regarding the other elements.

conceal, and the tort of fraudulent nondisclosure, which requires only the breach of a duty to disclose. *See United States v. Colton*, 231 F.3d 890, 898–900 & n.2 (4th Cir. 2000) (explaining the difference between fraudulent concealment, which requires an intent to deceive, and fraudulent nondisclosure, which requires the failure to disclose when there is a duty to do so, and collecting cases from jurisdictions that recognize a distinction between fraudulent concealment and fraudulent nondisclosure on this basis and those that do not); *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 21–22, 35–36 (Ariz. 2002) (en banc) (discussing the difference between fraudulent concealment, which requires an intent to conceal, and fraudulent nondisclosure, which requires only a duty to disclose). *See generally* Restatement (Second) of Torts §§ 550, 551 (Am. Law Inst. 1977) (discussing requirements of concealment versus nondisclosure).

¶21   Utah, however, does not draw a distinction between the torts of fraudulent nondisclosure and fraudulent concealment. In this state, "the elements for fraudulent nondisclosure are essentially the same as those for fraudulent concealment," and our courts have "sometimes used the names of the two causes of action interchangeably." *Anderson*, 2011 UT 66, ¶ 22 n.11. And while intent is not a listed element of fraudulent nondisclosure claims, our supreme court has nevertheless emphasized that "fraudulent nondisclosure is an intentional tort" and that "intent is the hallmark" of intentional torts. *Id.* ¶ 26.

¶22   In so stating, the *Anderson* court plainly described the tort of fraudulent nondisclosure as dependent on the actor's intent. *Id.* ¶¶ 25–26; *see also Marcantel v. Michael & Sonja Saltman Family Trust*, No. 2:16-cv-250-DBP, 2019 WL 1262648, at *5–7, *11 (D. Utah Mar. 19, 2019) (discussing *Anderson*, explaining that fraudulent intent is an element of the tort of fraudulent nondisclosure, and applying the element of intent accordingly to resolve the fraudulent nondisclosure claims at issue). To make

this point, the *Anderson* court contrasted fraudulent nondisclosure with negligent nondisclosure, explaining that the "essential difference" between the two claims "is the mental state of the defendant that the plaintiff must establish in order to prevail." *Anderson*, 2011 UT 66, ¶ 25. For fraudulent nondisclosure, a defendant must have "a willful intent to deceive," while for negligent nondisclosure, the plaintiff "is not required to demonstrate any wrongful intent on the part of the defendant." *Id.* (cleaned up); *see also Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*, 713 P.2d 55, 59 n.2 (Utah 1986) (explaining that "*negligent* misrepresentation does not require the intentional mental state necessary to establish fraud"); *Shah v. Intermountain Healthcare, Inc.*, 2013 UT App 261, ¶ 11, 314 P.3d 1079 ("The elements of negligent misrepresentation are similar to those of fraud except that negligent misrepresentation does not require the intentional mental state necessary to establish fraud." (cleaned up)); *Moore v. Smith*, 2007 UT App 101, ¶ 36 n.12, 158 P.3d 562 (stating that the "only difference between" claims for negligent misrepresentation and fraudulent concealment is that negligent misrepresentation requires a "lesser mental state").

¶23 Applying these principles, we conclude that the district court properly considered Cannon's beliefs—i.e., his mental state—in determining whether Cannon knew of the information he failed to disclose. To be sure, Cannon knew of the Option Agreement and the Riverton Corners property during the divorce proceedings. But importantly, the court credited Cannon's testimony that he did not know that the Option Agreement and the Riverton Corners property were "asset[s]" responsive to Jensen's discovery request. And because Cannon did not know they were responsive to Jensen's discovery, Cannon lacked a "willful intent to deceive," as is required for fraudulent nondisclosure. *See Anderson*, 2011 UT 66, ¶¶ 25–26 (cleaned up); *see also Marcantel*, 2019 WL 1262648, at *6–7 (looking at the circumstances surrounding the alleged

fraudulent nondisclosure to conclude that a mere knowledge of an easement and a failure to disclose it did not amount to fraudulent intent).

¶24    In his separate opinion, Judge Harris disagrees with our interpretation of *Anderson*. He contends that in applying the supreme court's instruction about willful intent to the circumstances of this case, we have "tack[ed] on a new fourth element never before discussed as such by any Utah appellate opinion." *Infra* ¶ 58. We respectfully disagree with Judge Harris's assessment of our analysis. We have not added a fourth element to the tort of fraudulent nondisclosure any more than the supreme court did in *Anderson*. Rather, we believe we are merely following the lead of *Anderson* in recognizing that an intent to deceive must necessarily inform the application of the tort's three elements.

¶25    The court in *Anderson* addressed the contours of the second element of the tort: that "the defendant *knew* of the information he failed to disclose." 2011 UT 66, ¶¶ 22, 24 (cleaned up). In particular, the court resolved "whether satisfaction of this element requires a showing of actual, or merely constructive, knowledge," *id.* ¶ 24, emphasizing that the tort of fraudulent nondisclosure is a tort committed by someone acting with fraudulent intent, or the intent to deceive, *id.* ¶¶ 25–26. The court then concluded that the tort must require *actual* knowledge of the undisclosed information, because to conclude otherwise would overlook the intentional nature of the tort. *Id.* ¶ 26. The court explained it would be "unreasonable and illogical to infer that the defendant intended to conceal [a nondisclosed] fact" if the defendant did not have *actual* knowledge of it. *Id.*

¶26    Similarly, here, the three elements of nondisclosure do not answer the specific question the district court (and now this court) have been called on to resolve: whether satisfaction of the knowledge element requires that Cannon knew of the Option

Agreement and the Riverton Corners property in the abstract or that he knew that the properties were assets as defined by Jensen's discovery requests. To answer that question, we do not add a fourth element to the tort. Instead, like the supreme court in *Anderson*, we resolve that unanswered question by acknowledging that "fraudulent nondisclosure is an intentional tort." *Id.* And we conclude that when a defendant like Cannon lacks the knowledge that a particular property is an asset for purposes of discovery (as the district court found), "it is both unreasonable and illogical to infer that [he] intended to conceal that fact." *Id.* "Indeed, permitting a plaintiff to state a claim for fraudulent nondisclosure without proving actual knowledge on the part of the defendant would allow a plaintiff to convert merely negligent acts into fraudulent acts." *Id.*

¶27 Finally, we take no issue with Judge Harris's conclusion that fraudulent intent for purposes of a fraudulent nondisclosure claim may be inferred when a plaintiff shows that a defendant had actual knowledge of a material fact and failed to disclose that fact. *See infra* ¶¶ 60, 63. The supreme court made that clear in *Anderson*. 2011 UT 66, ¶ 26. But we do not read *Anderson* as *requiring* such an inference. And we view it as inconsistent with the designation of fraudulent nondisclosure as an intentional tort to insist that such an inference must be drawn in this case where the court found, as a factual matter, that Cannon did not know the Option Agreement and the Riverton Corners property were assets to be disclosed. Such a conclusion, in our opinion, would render Cannon liable for fraudulent nondisclosure even where the court found that he carried no fraudulent intent. And that is a conclusion we cannot square with *Anderson*.

¶28 For these reasons, we conclude that the court did not improperly extend or apply the elements of fraudulent nondisclosure in considering Cannon's beliefs about whether the Option Agreement and the Riverton Corners property had to be

disclosed. Accordingly, we affirm the court's judgment on Jensen's fraudulent nondisclosure claim.[3]

B.      Jensen's Non-fraud Claims

¶29      In addition to asserting claims for fraud and fraudulent nondisclosure, Jensen sought relief from the divorce decree based on theories of negligent misrepresentation, breach of the implied covenant of good faith and fair dealing, accounting, and unjust enrichment (the non-fraud claims). Cannon moved for summary judgment on these claims, arguing that they were untimely and improper under rule 60(d) of the Utah Rules of Civil Procedure. The district court agreed and granted Cannon's motion. The court adopted Cannon's construction of rule 60(d), concluding that "in attacking the underlying settlement agreement," the "only appropriate actions are the fraud related claims."

¶30      Jensen challenges the court's summary judgment decision, contending that the plain language of rule 60(d) permits parties to seek relief from a judgment based on claims

---

3. On appeal, Jensen also asserts claims of error regarding related aspects of the court's fraudulent nondisclosure rulings. Jensen challenges the court's valuation of the Option Agreement, its assessment of Cannon's ownership in the Riverton Corners property without reference to partnership law, and its exclusion of an amended expert report appraising the value of the Riverton Corners property. She additionally challenges the court's alternative determination that all Jensen's claims are barred by the doctrine of laches. However, because we affirm the court's determination that Jensen did not establish her claims of fraudulent nondisclosure regarding the Option Agreement and the Riverton Corners property by clear and convincing evidence, we have no occasion to reach these other claims of error.

other than fraud. Although we agree with Jensen that fraud is not the *only* theory allowed in an independent action for relief from a judgment, we do not agree that the district court erred in granting summary judgment against Jensen on her particular non-fraud claims.

¶31 Rule 60 recognizes two avenues by which a litigant may seek relief from a final judgment. *See Pepper v. Zions First Nat'l Bank, NA*, 801 P.2d 144, 150 (Utah 1990) ("[D]espite the doctrine of res judicata, [rule 60] expressly recognizes two different methods for attacking a judgment."). First, rule 60(b) permits a party to move a district court for relief from a judgment based on several enumerated grounds, such as excusable neglect, newly discovered evidence, and fraud, each of which is subject to time constraints set out in subsection 60(c). *See* Utah R. Civ. P. 60(b), (c) (requiring a motion for relief from a judgment based on grounds such as excusable neglect, newly discovered evidence, and fraud to be filed within ninety days of the entry of judgment, while a motion based on other reasons under subsection (b) must be filed "within a reasonable time").

¶32 Second, rule 60(d) separately recognizes a district court's inherent power to entertain an independent action for relief from a judgment. *Id.* R. 60(d); *see also State v. Boyden*, 2019 UT 11, ¶ 39, 441 P.3d 737; *St. Pierre v. Edmonds*, 645 P.2d 615, 618 (Utah 1982) (recognizing a "court's historic powers to relieve a party" from judgment and explaining that rule 60 "does not limit the power of a court to entertain an independent action" (cleaned up)). Because the availability of an independent action flows from a "court's historic powers to relieve a party" from judgment, the time frames set forth in rule 60(c) do not apply. *See St. Pierre*, 645 P.2d at 618. "Rather, the doctrine of laches and other equitable principles determine the time within which the action must be brought." *Id.*

¶33    When Jensen discovered Cannon's alleged fraud, the window of time for her to seek relief for that fraud under rule 60(b) had long since expired. *See* Utah R. Civ. P. 60(b)(3), (c) (providing that a motion for relief from a judgment or order on the basis of fraud must be filed "not more than 90 days after entry of the judgment or order"). Thus, her only option was to seek relief from the divorce decree by filing an independent action as endorsed by rule 60(d). And while Jensen originally asserted only fraud claims, she later amended her complaint to add the non-fraud claims, including a claim for negligent misrepresentation.[4]

¶34    Rule 60(d) states, "This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding or to set aside a judgment for fraud upon the court." *Id.* R. 60(d). "When we interpret a rule of civil procedure, we look to the express language of the rule and to cases interpreting it." *Drew v. Lee*, 2011 UT 15, ¶ 16, 250 P.3d 48. The dispute before us centers on the final phrase of the rule: "for fraud upon the court." Jensen argues that the phrase modifies only the clause that immediately precedes it—"to set aside a judgment"—and thus the rule permits actions "to relieve a party from a judgment, order or proceeding" based on causes of action other than fraud. The district court and Cannon disagree, concluding that "for fraud upon the court" modifies the entire provision, meaning the only claim recognizable in an independent action for relief from judgment is fraud.

---

4. Jensen's non-fraud claims sound in negligence, contract, and equity. Yet on appeal, she makes no distinction between them and refers to them collectively as "causes of action based in negligence." Thus, we follow Jensen's lead and consider her four non-fraud claims collectively as based in negligence.

¶35    Neither party dissects the grammar of the sentence; each simply insists his or her interpretation is the right one. And, in fairness, the sentence could perhaps be read either way.[5] But this issue does not come to us on a blank slate. Our supreme court has previously endorsed the viability of independent actions for relief from a judgment on grounds other than fraud. Thus, on this point we agree with Jensen.

¶36    In *St. Pierre v. Edmonds*, 645 P.2d 615 (Utah 1982), the court acknowledged the district court's power to entertain an independent action predicated on "duress" arising out of the "physical and mental intimidation" directed at the appellant by the other party in the underlying suit. *Id.* at 618–20. And in *Gillmor v. Wright*, 850 P.2d 431 (Utah 1993), the court recognized accident and mutual mistake as grounds on which an independent action may be asserted in equity under rule 60.[6] *Id.*

---

5. The federal counterpart to Utah's rule 60(d) appears to be clearer (at least grammatically) on this point, providing, "This rule does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding; . . . or (3) set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d).

6. Although *Gillmor* and *St. Pierre* were decided under a previous version of rule 60, the previous rule's provision for an independent action is nearly identical to the current rule 60(d). *Compare* Utah R. Civ. P. 60(d) ("This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding or to set aside a judgment for fraud upon the court."), *with Pepper v. Zions First Nat'l Bank, NA*, 801 P.2d 144, 150 n.1 (Utah 1990) (setting forth the previous version of rule 60, which provided, at the end of subsection (b), "This rule does not limit the power of a court to

(continued…)

at 435–36. In fact, the *Gillmor* court rejected the appellant's reading of *St. Pierre* as providing that "an independent action in equity is justified only when particularly egregious behavior has resulted in an unconscionable judgment or order." *Id.* at 435. Observing that "*St. Pierre* involved allegations of fraud upon the court," the court explained, "The case did not state that an independent action will only lie for such claims or that such an action is no longer viable to remedy errors based on mutual mistakes of fact in legal descriptions." *Id.* In support, the court pointed to its reliance in *St. Pierre* on federal treatises for the proposition that although "relief from a judgment by an independent action on the basis of accident or mistake is less common than relief on the basis of fraud," "both accident and mistake afford the basis for relief in an appropriate situation." *Id.* at 435–36 (cleaned up); *see also* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2868 (3d ed. 2012) (explaining that under federal rule 60(d), "[r]esort to an independent action may be had only rarely, and then only under unusual and exceptional circumstances," and that while "[t]he most common ground for an independent action is fraud, . . . the action also will lie on the basis of mistake").

¶37 Although *Gillmor* and *St. Pierre* compel us to conclude that "fraud upon the court" is not the only basis for relief from judgment in an independent action, Jensen has not persuaded us that her negligence-based claims are a viable basis for such relief. Rather, our courts have generally rejected the idea that claims akin to negligence are adequate to wage an independent collateral attack on a judgment.

---

(…continued)
entertain an independent action to relieve a party from a judgment, order or proceeding or to set aside a judgment for fraud upon the court" (cleaned up)).

¶38 In this respect, the decision in *Christensen v. Christensen*, 619 P.2d 1372 (Utah 1980), is noteworthy. There, the court rejected an appellant's attempt to set aside an award of property to her former husband based on a claim of negligent misrepresentation. *Id.* at 1372–74. The appellant had originally argued in her independent action that her ex-husband had fraudulently misrepresented the value of certain property—an apartment complex—during the divorce proceedings. *Id.* at 1372–73. After the district court ruled against her on the fraud claim, she argued that "even though [the ex-husband's] conduct did not constitute fraud, the Court should have modified the original decree and given her part of the equity in the apartment complex in light of the disparity between the actual value of the property and the value she was led to believe that it had at that time." *Id.* at 1373. The supreme court rejected her claim. Left with only "an alleged nonfraudulent misrepresentation by the [ex-husband]," the court held that "[s]uch facts would not justify . . . overturning a stipulated property settlement and redistributing the property." *Id.* The court expressed sympathy for the appellant's position but affirmed the district court, stating that it "[could not] now upset a stipulated property settlement because of her having relied upon values furnished by her husband in an adversary proceeding." *Id.* at 1373–74.

¶39 To the extent Jensen seeks to rely on an alleged negligent misrepresentation during the course of her divorce proceeding, in our view, there is no basis on which to distinguish this case from *Christensen*. At the very least, we are aware of no case in Utah (nor has Jensen directed us to one) where a court has permitted a collateral attack on a judgment through an independent action raising only negligence-based claims.[7] Like

---

7. This view appears to be consistent with federal law interpreting and applying federal rule 60(d). *See United States v.*

(continued…)

in *Christensen*, Jensen may have been mistaken as to the value of her stipulated property settlement due to the alleged negligent misrepresentations of her husband, but such facts are inadequate to relieve her from the divorce decree. *See id.*; *see also Pepper*, 801 P.2d at 150–51 (explaining that while rule 60(b) "sets forth several grounds for setting aside a judgment by motion," several of those grounds "would not be an adequate ground for an independent collateral attack on a judgment," such as relief sought due to excusable neglect); *Beagley v. Spurling*, No. 981515-CA, 1998 WL 1758335, at *1 (Utah Ct. App. 1998) (per curiam) (stating that rule 60 "does not authorize an independent action asserting the grounds enumerated" in rule 60(b) and that "several grounds for setting aside a judgment by motion would not be an adequate ground for an independent attack on a judgment" (cleaned up)). For these reasons, we conclude that the district court did not err in dismissing Jensen's non-fraud claims.

---

(…continued)
*Beggerly*, 524 U.S. 38, 47 (1998) (determining that allegations that the government "failed to thoroughly search its records and make full disclosure to the Court" regarding a land grant at issue did not "approach [the] demanding standard" such that "allow[ing] the judgment to stand" would work a "grave miscarriage of justice" (cleaned up)); *Haik v. Salt Lake City Corp.*, No. 2:12-CV-997 TS, 2013 WL 968141, at *7–8 (D. Utah Mar. 12, 2013) (concluding that allegations that the defendants "failed to provide allegedly relevant information" with respect to change applications did "not meet the high burden necessary to bring an independent action," as described in *Beggerly*), *aff'd,* 567 F. App'x 621 (10th Cir. 2014). *See generally United States v. Buck*, 281 F.3d 1336, 1341 (10th Cir. 2002) (stating that the "independent action" for relief under rule 60 is "a narrow avenue" that "should be available only to prevent a grave miscarriage of justice" (cleaned up)).

## II. Cannon's Cross-appeal

¶40 In his cross-appeal, Cannon challenges the district court's denial of both his request for bad faith attorney fees under Utah Code section 78B-5-825 and his motion for sanctions under rule 11 of the Utah Rules of Civil Procedure. He also requests an award of attorney fees on appeal pursuant to rule 33 of the Utah Rules of Appellate Procedure. We address each issue below.

### A. Bad Faith Attorney Fees

¶41 Cannon challenges the district court's denial of fees under section 78B-5-825, claiming that the district court's finding "that the case was brought in good faith" is clearly erroneous. (Cleaned up.) To prove his claim, he characterizes the "entire case" as "a fishing expedition and an excuse to engage [him] in expensive, stressful litigation for a decade." He also assigns bad-faith motives to Jensen, pointing generally to Jensen's failure to actively pursue her case for many years following the filing of her first complaint.

¶42 To receive an award of attorney fees under section 78B-5-825, the moving party bears the burden of proving "two distinct elements," namely, that the claim lacks merit and that the action was not brought in good faith. *In re Discipline of Sonnenreich*, 2004 UT 3, ¶ 46, 86 P.3d 712. Good faith, for purposes of the latter element, is defined as having "(1) an honest belief in the propriety of the activities in question; (2) no intent to take unconscionable advantage of others; and (3) no intent to, or knowledge of[,] the fact that the activities in question will hinder, delay, or defraud others." *Id.* ¶ 48 (cleaned up). "To establish a lack of good faith, or 'bad faith' under section [78B-5-825], a party must prove that one or more of these factors is lacking." *Id.*

¶43 We conclude that Cannon has not demonstrated that the district court erred by denying his request for attorney fees. As the party requesting fees under section 78B-5-825, Cannon bore the burden of proving that Jensen brought this action in bad faith. And although Cannon posits and ascribes to Jensen bad-faith motives favorable to his position, he relies exclusively on accusation and points to no record evidence demonstrating that Jensen did not believe in the propriety of her claims or that she filed this action with the intent to "hinder, delay, or defraud." *See id.* (cleaned up). For example, Cannon complains that Jensen did not meaningfully investigate her claims until filing this action in 2016, but he cites no supporting evidence and fails to tie even the allegation to the applicable standard. Similarly, Cannon's generic complaints about Jensen's failure to actively prosecute her 2009 case do little to establish that she filed the present case in bad faith.

¶44 We review the district court's finding regarding bad faith for clear error, *Bresee v. Barton*, 2016 UT App 220, ¶ 15, 387 P.3d 536, and will reverse that finding only if it is "against the clear weight of the evidence" or "we otherwise reach a firm conviction that a mistake has been made," *Grimm v. DxNA LLC*, 2018 UT App 115, ¶ 12, 427 P.3d 571 (cleaned up). While litigating with Jensen over the course of the last decade has undoubtedly been expensive and frustrating for Cannon, his arguments have not persuaded us that the court clearly erred in finding that Jensen brought this action in good faith.[8]

---

8. Cannon also challenges the district court's denial of bad faith attorney fees by arguing that Jensen's action was meritless. However, because we have affirmed the court's good faith determination, it is unnecessary for us to address whether Jensen's case lacked merit. *See* Utah Code Ann. § 78B-5-825(1) (LexisNexis 2018) (providing that a district court shall award bad

(continued…)

B.      Rule 11 Sanctions

¶45    Cannon next argues that the district court erred in denying his motion for sanctions against Jensen under rule 11 of the Utah Rules of Civil Procedure. He contends that Jensen's motion in limine regarding spoliation contained a baseless allegation lacking evidentiary support—that the Option Agreement was "in writing at one point," but "no longer exists" because Cannon "intentionally destroyed [it]." *See* Utah R. Civ. P. 11(b)(3) (providing that, by filing a motion with the court, the attorney certifies "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery").

¶46    The district court denied Cannon's motion because it determined that while "there may not be direct evidentiary support for the contention" that Cannon spoliated a written version of the Option Agreement, "there are inferences" that could support that position. The court reached this conclusion by considering the circumstances surrounding the Option Agreement, including the parties to the contract and their experience, as well as the type of contract involved and statute of frauds considerations. In this respect, the court stated that while it did not view Jensen's spoliation motion to be a "good motion," it did not believe the motion rose to the level of a rule 11 violation.

---

(…continued)
faith attorney fees if it concludes that the case was *both* without merit and brought in bad faith).

¶47 On appeal, Cannon assails the court's denial of his motion, arguing that by accusing him of spoliation, Jensen necessarily asserted that he "intentionally and inappropriately" destroyed the Option Agreement document and that sanctions are merited for such an assertion because it was "baseless."[9] Cannon also contends that because Jensen "permitted so many years to go by" before actively prosecuting her case, she could not "in good faith" ask the district court to infer that Cannon spoliated a decades-old document. We disagree.

¶48 Our courts have explained that "rule 11(b)(3) sets a relatively low standard requiring some factual basis after a reasonable inquiry, permitting sanctions against plaintiffs only for bringing a claim merely founded on innuendo and suspicion." *Heartwood Home Health & Hospice LLC v. Huber*, 2020 UT App 13, ¶¶ 36–37, 39–40, 459 P.3d 1060 (cleaned up) (vacating rule 11 sanctions related to a failure to withdraw certain claims where, despite the fact that the claims were "anemic," they nevertheless "had not become plainly frivolous or completely lacking in evidentiary support"); *see also Morse v. Packer*, 2000 UT 86, ¶¶ 28–29, 15 P.3d 1021 (explaining that rule 11 sanctions should not be imposed "whenever there are factual errors" but that they should be reserved for "misstatements" that are "significant" and "critical," and concluding that sanctions were appropriate where, given the record, "a statement in [a] pleading . . . clearly lacked evidentiary support" (cleaned up)).

---

9. In support of his rule 11 motion, Cannon claimed that Jensen's "motion in limine accuses [him] of intentionally destroying evidence with the purpose of harming his ex-wife." In other words, the premise of the rule 11 motion was that Jensen had accused Cannon of intentionally destroying the Option Agreement in bad faith.

¶49　At the outset, we are not persuaded that Jensen's spoliation motion was tantamount to an accusation of an intentional and inappropriate destruction of the Option Agreement. For one thing, nowhere in her motion in limine, seeking sanctions under rule 37, did Jensen accuse Cannon of acting in bad faith. For another, the premise underlying Cannon's argument—that a spoliation accusation necessarily implies a bad faith motive—is not sound. As this court has explained, "a party who destroys or conceals relevant evidence need not do so willfully or in bad faith to trigger the penalties outlined in rule 37." *Ockey v. Club Jam*, 2014 UT App 126, ¶ 11, 328 P.3d 880; *see also Daynight, LLC v. Mobilight, Inc.*, 2011 UT App 28, ¶ 2, 248 P.3d 1010 (explaining that spoliation "is on a qualitatively different level than a simple discovery abuse" and that a spoliation determination "does not require a finding of willfulness, bad faith, fault or persistent dilatory tactics or the violation of court orders before a court may sanction a party" (cleaned up)).

¶50　We also agree with the district court that given the type of agreement involved—an option related to the sale of real estate involving sophisticated players—Jensen's allegations of a written Option Agreement and its spoliation did not clearly lack evidentiary support. Rather, the motion presented a colorable argument based on inferences that could be drawn from the circumstances surrounding the agreement's genesis. And other than suggesting that the court ought to have adopted an inference that Jensen's dilatory conduct contributed to the destruction of any Option Agreement document and pointing to circumstances he believes to be favorable to his position, Cannon does not engage with the court's actual reasoning on the issue or the evidence supporting its rule 11 determination. *See Federated Cap. Corp. v. Shaw*, 2018 UT App 120, ¶ 20, 428 P.3d 12 (explaining that an appellant who "does not meaningfully engage with the district court's

reasoning" necessarily "falls short of demonstrating any error on the part of the district court"). Thus, although her claim was ultimately unsuccessful, we conclude that it was not frivolous of Jensen to argue to the district court that "there would be something in writing" memorializing the Option Agreement and that Cannon had a hand in failing to preserve it.

¶51 Because Cannon has not persuaded us that the district court erred by denying his request for rule 11 sanctions, we affirm the court's resolution of the motion.

C.     Rule 33 Fees on Appeal

¶52 Finally, Cannon requests his attorney fees on appeal pursuant to rule 33 of the Utah Rules of Appellate Procedure. Rule 33(a) provides that when an "appeal taken under these rules is either frivolous or for delay, [the appellate court] shall award just damages, which may include . . . reasonable attorney fees, to the prevailing party." The imposition of sanctions under rule 33 is a serious matter, "only to be used in egregious cases." *Pyper v. Reil*, 2018 UT App 200, ¶ 28 n.3, 437 P.3d 493 (cleaned up). While Jensen may not have prevailed on her appellate claims, this is not an egregious case. Thus, we decline to award Cannon his attorney fees on appeal.

CONCLUSION

¶53 We affirm on the issues raised by Jensen's appeal. First, we conclude that the district court appropriately determined that Jensen did not establish her fraudulent nondisclosure claims. Second, we conclude that the court properly dismissed Jensen's negligence-based claims under rule 60 of the Utah Rules of Civil Procedure.

¶54 We also affirm on the issues raised by Cannon's cross-appeal. Specifically, we affirm the district court's denial of Cannon's request for bad faith attorney fees and his motion for sanctions pursuant to rule 11 of the Utah Rules of Civil Procedure.

———————

HARRIS, Judge (concurring in part, and concurring in the result):

¶55 I concur without reservation in Parts I.B. and II of the majority opinion. That is, I agree with the majority's disposition of Cannon's cross-appeal, as well as with the majority's explanation of why the district court was correct to dismiss Jensen's non-fraud claims on summary judgment. But I cannot sign on to the majority's analysis in Part I.A., regarding Jensen's claim for fraudulent nondisclosure, because in my view the majority adds a fourth element to our supreme court's three-element test for establishing fraudulent nondisclosure under Utah law. Nevertheless, I concur in the result reached by the majority, because I am persuaded that the district court correctly dismissed Jensen's fraudulent nondisclosure claim on the alternative ground that it was barred by the doctrine of laches.

I.

¶56 In the course of analyzing whether the district court properly dismissed Jensen's claim for fraudulent nondisclosure, we are called upon to interpret our supreme court's statements in *Anderson v. Kriser*, 2011 UT 66, 266 P.3d 819, and apply those statements to the facts of this case. As an introductory matter, I readily acknowledge that *Anderson*, as applied to the question presented here, is difficult to interpret, and that it may well be that our supreme court intended *Anderson* to read as the majority has interpreted it. But I read *Anderson* differently, and perceive therein an intent by our supreme court to set out a broader version of the fraudulent nondisclosure tort, and I write

separately in an effort to articulate that interpretation. Ultimately, this may be an instance in which our supreme court may need to take an appropriate opportunity to clarify its intentions regarding the contours of the fraudulent nondisclosure tort.

¶57 In my view, our supreme court has articulated the tort of fraudulent nondisclosure as containing three elements—not four. At the outset of its analysis, the majority correctly recites those elements. *See supra* ¶ 16 (citing *Anderson*, 2011 UT 66, ¶ 22). They are as follows: "(1) the defendant had a legal *duty* to communicate information; (2) the defendant *knew* of the information he failed to disclose; and (3) the nondisclosed information was *material*."[10] *Anderson*, 2011 UT 66, ¶ 22 (cleaned up). In every case in which our supreme court has discussed fraudulent nondisclosure, it has described the tort as being comprised of these same three elements. *See, e.g.*, *Hess v. Canberra Dev. Co.*, 2011 UT 22, ¶ 29, 254 P.3d 161; *Mitchell v. Christensen*, 2001 UT 80, ¶ 9, 31 P.3d 572. To my knowledge, the court has never described this tort as containing a fourth element.

---

10. The district court did not correctly recite the three elements. It misstated the first element by proclaiming that the duty in question had to be a "fiduciary duty," which is a contention unsupported by any case law of which I am aware. As our supreme court articulates this element, the duty in question does not necessarily have to be "fiduciary" in nature. *See, e.g.*, *Anderson v. Kriser*, 2011 UT 66, ¶ 22, 266 P.3d 819. The district court also misstated the third element, articulating that element as an "intentional failure to disclose to plaintiff's detriment." As discussed generally herein, our supreme court has never included "intent to deceive" or "intentional failure to disclose" as one of the elements of the tort of fraudulent nondisclosure.

¶58    Yet both the district court as well as the majority in this case tack on a new fourth element never before discussed as such by any Utah appellate opinion.[11] According to the majority, a plaintiff who wishes to make out a valid claim for fraudulent nondisclosure must not only satisfy the three listed elements, but in addition must also prove that the defendant had a "willful intent to deceive" the plaintiff. *See supra* ¶¶ 22–23. In my view, the addition of this fourth element is unsupported by existing Utah Supreme Court precedent.

¶59    I have no quarrel with the majority's observation— supported by *Anderson*—that fraudulent nondisclosure is an intentional tort, and that such torts are generally distinguished from non-intentional torts by the "mental state of the defendant that the plaintiff must establish in order to prevail." *See Anderson*, 2011 UT 66, ¶¶ 25–26. But I read *Anderson* as explaining that the three elements, as listed, have an intent requirement already baked into them, and that a plaintiff who satisfies all three listed elements has raised a sufficient inference that the defendant acted intentionally.[12] *Id.* ¶ 26. In this way, the

---

11. I recognize that one local federal court recently held, like the majority does here, that under Utah law, the tort of fraudulent nondisclosure has a fourth element, holding that—in addition to the three elements recited by the Utah Supreme Court—a plaintiff "must also show clear and convincing proof of intent to deceive." *See Marcantel v. Michael & Sonja Saltman Family Trust*, No. 2:16-cv-250-DBP, 2019 WL 1262648, at *5 (D. Utah Mar. 19, 2019). In my view, the federal court's analysis suffers from the same potential infirmities as the majority's.

12. The majority reads *Anderson* differently, offering its viewpoint that a district court is not required to draw such an inference, even where all three elements are otherwise met. *See*

(continued…)

three listed elements already distinguish the tort from its negligence-based cousin; no unlisted fourth element is necessary for this purpose.

¶60    As the court explained in *Anderson*, "fraudulent intent is often difficult to prove by direct evidence" and, "[b]ecause of this difficulty," in other contexts—citing specifically to criminal theft and bankruptcy nondischargeability cases, *see id.* ¶ 26 n.26—"fraudulent intent is often inferred based on the totality of the circumstances in a case." *Id.* ¶ 26. The court then explained that, in the specific context of a fraudulent nondisclosure claim, "fraudulent intent may be inferred" when the three listed elements of the tort are met, that is, "when a plaintiff demonstrates that a defendant had actual knowledge of a material fact and that the defendant failed to disclose that fact." *Id.* The court explained that this formulation of the tort sufficiently distinguishes it from the tort of *negligent* nondisclosure, which does not require a plaintiff to demonstrate the defendant had actual knowledge of the material information, but instead merely requires a showing that the defendant should have been aware of the material information. *See id.*

¶61    In my view, this formulation of the tort is not only sufficiently distinct from negligent nondisclosure, but it is also—as the majority acknowledges, *supra* ¶ 19—consistent with our law's formulation of other similar intentional torts, such as

_____

(…continued)

*supra* ¶ 27. But if that's true, then there exists a separate inquiry, beyond the three listed elements, that a district court must undertake: namely, examining whether an intent inference should be drawn on the facts of the particular case. This looks a lot like a fourth element to me, even though the majority maintains that it has "not added a fourth element to the tort of fraudulent nondisclosure." *See supra* ¶ 24.

constructive fraud. *See Jensen v. IHC Hosps., Inc.*, 944 P.2d 327, 339 (Utah 1997) (stating that the tort of constructive fraud contains only "two elements: (i) a confidential relationship between the parties; and (ii) a failure to disclose material facts"). And—as the majority also acknowledges, *supra* ¶ 20—it is also consistent with the manner in which some other states formulate the elements of the fraudulent nondisclosure tort. *See, e.g.*, Restatement (Second) of Torts §§ 550, 551 (Am. Law Inst. 1977) (describing the tort of "fraudulent concealment" as containing an explicit requirement that the defendant acted "intentionally," but describing the tort of "fraudulent nondisclosure" as containing no such requirement).

¶62    The majority points out that our supreme court has used the terms "fraudulent concealment" and "fraudulent nondisclosure" more or less interchangeably, and has even noted that the elements of the two torts are "essentially the same," *see supra* ¶ 21 (citing *Anderson*, 2011 UT 66, ¶ 22 n.11), and infers from that fact that the apparently-combined tort must look more like fraudulent concealment than fraudulent nondisclosure, and therefore must have a separate intent requirement. But it is just as easy to draw the opposite inference from the supreme court's apparent merger of the two torts: that the merged tort looks more like fraudulent nondisclosure, as described in the Restatement, and does not have a separate intent requirement.[13] In my view, this inference is supported by the fact that, as noted

---

13. I also note that our supreme court does not appear to have yet been confronted with a case that required it to squarely address the question of whether, and to what extent, the two torts (fraudulent concealment and fraudulent nondisclosure) are separate under Utah law, and therefore acknowledge the limited utility of the inferences drawn here by both the majority's opinion and mine.

above, our supreme court has, without exception, described this merged tort as containing three—and only three—elements, none of which contains an explicit intent requirement. This inference is also supported by the fact that, in certain other jurisdictions, the difference between fraudulent concealment and fraudulent nondisclosure is that the more active concealment tort requires a showing of "intent to mislead" but does not require a showing that there was any "duty to speak," whereas the more passive nondisclosure tort requires a showing that there is a duty to speak but does not require a showing of intent to deceive. *See United States v. Colton*, 231 F.3d 890, 899 & n.2 (4th Cir. 2000) (citing cases). Because the tort, as articulated by our supreme court, contains a requirement that there be a duty to disclose, and contains no explicit requirement that there be intent to deceive, to my mind that tort appears a lot more like fraudulent nondisclosure than fraudulent concealment.

¶63    For all of these reasons, I would conclude that the district court erred by requiring Jensen to prove, as part of her fraudulent nondisclosure claim, that Cannon had a specific intent to deceive her. Jensen should only be required to prove the three elements of the tort listed in *Anderson*. Under my interpretation of that case, Jensen can make out a valid claim by demonstrating that Cannon had a duty to disclose the Riverton Corners property and the Option Agreement to Jensen during the divorce proceedings; that Cannon had actual knowledge of those assets; and that those assets were material. As our supreme court has explained, once those three elements are met, the district court "may . . . infer[]" the requisite level of intent on the part of Cannon. *See Anderson*, 2011 UT 66, ¶ 26.

¶64    If the majority had adopted my interpretation of *Anderson*—that the tort of fraudulent nondisclosure does not require a direct showing of intent to deceive—we would have had to confront a number of additional questions regarding the

viability of Jensen's fraudulent nondisclosure claim. First, we would have had to determine whether the "legal *duty* to communicate information" described in the first element of the tort, *see id.* ¶ 22 (cleaned up), includes discovery disclosure obligations imposed by rule 26 of the Utah Rules of Civil Procedure. I acknowledge that turning discovery violations into potential torts is something that could have negative unintended consequences, but discovery disclosure obligations are arguably "legal" duties, and other states have determined that pretrial disclosure obligations do qualify as the kind of duty that can trigger the tort, albeit perhaps with additional restrictions. *See, e.g., Allstate Ins. Co. v. Dooley*, 243 P.3d 197, 204–05 (Alaska 2010) (holding that "a cause of action for fraudulent concealment of evidence may be maintained in Alaska only when a plaintiff lacks another sufficient remedy," because "most discovery violations can be appropriately addressed with our existing civil rules," and because "the tort of fraudulent concealment of evidence [should] be available only when evidence is concealed until after judgment is entered and the time for seeking relief from judgment under Civil Rule 60(b) has expired"); *Rosenblit v. Zimmerman*, 766 A.2d 749, 757 (N.J. 2001) (describing a "slight modification" to the tort when it "occurs in a litigation context").

¶65    Second, if discovery disclosure obligations qualify as legal duties for the purposes of the tort, we would then have had to determine whether Cannon had a duty to disclose the specific properties at issue here: the Riverton Corners property and the Option Agreement. Because the discovery rules obligated him to disclose his "assets" to Jensen, we would have then had to determine whether the Riverton Corners property and the Option Agreement were "assets" subject to Cannon's disclosure obligation. That inquiry, in turn—at least with respect to the Riverton Corners property—may have required us to analyze partnership law, given Cannon's defense that the Riverton

Corners property did not belong to him or his partnership but, instead, belonged to his partner.[14]

¶66   Next, we may have had to confront other issues raised by Jensen in her appeal, including whether the district court properly excluded one of Jensen's expert witnesses, and whether the district court correctly valued the Option Agreement.

II.

¶67   But I need not further explore these issues in this concurring opinion, because in my view the district court's alternative disposition of Jensen's claim for fraudulent nondisclosure—that Jensen's suit was barred by the equitable doctrine of laches—was correct. On that basis, I concur in the result reached by the majority opinion.

¶68   The doctrine of laches "has two elements: (1) a party's lack of diligence and (2) an injury resulting from that lack of diligence." *Insight Assets, Inc. v. Farias*, 2013 UT 47, ¶ 19, 321 P.3d 1021 (cleaned up). As our supreme court has explained, "laches

---

14. Both the majority and the district court framed the question as "whether satisfaction of the knowledge element requires that Cannon knew of the Option Agreement and the Riverton Corners property in the abstract or that he knew that the properties were assets as defined by Jensen's discovery requests." *See supra* ¶ 26. But I read *Anderson* as having answered that question: the "knowledge" necessary to satisfy the second element is simply knowledge "of the information he failed to disclose," *Anderson*, 2011 UT 66, ¶ 22 (cleaned up), and not necessarily knowledge of whether the information in question had to be disclosed. Here, Cannon had actual knowledge of the properties, and may therefore be liable under *Anderson* if the properties actually were his assets and he failed to disclose them.

is based upon the maxim that equity aids the vigilant and not those who slumber on their rights." *Id.* ¶ 17 (cleaned up). Accordingly, the doctrine of laches punishes plaintiffs whose litigation delays harm the other parties involved in a suit: "not mere delay, but delay that works a disadvantage to another," is of "legal significance" in a laches analysis. *Id.* (cleaned up). The doctrine is an equitable one "founded upon considerations of time and injury." *Id.* (cleaned up). At its essence, laches "is a negative equitable remedy which deprives one of some right or remedy to which he would otherwise be entitled, because his delay in seeking it has operated to the prejudice of another." *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 2012 UT 66, ¶ 37, 289 P.3d 502 (cleaned up).

¶69 The language of the two-part laches test, as articulated by our supreme court, is broad. That test requires a defendant to demonstrate the existence of two elements: the plaintiff's "lack of diligence," and a resulting injury to the defendant. *Insight Assets*, 2013 UT 47, ¶ 19. So, although laches cases often turn on whether the plaintiff delayed in bringing suit in the first place, *see Veysey v. Veysey*, 2014 UT App 264, ¶ 16, 339 P.3d 131 (asking whether "the plaintiff unreasonably delayed in bringing an action" to fulfill the first laches element), the doctrine is not limited in application to only that circumstance. As our supreme court has explained, "laches is designed to shelter a prejudiced defendant from the difficulties of litigating meritorious claims after an unexplained delay," *Horne*, 2012 UT 66, ¶ 37, and no Utah case of which I am aware has limited the definition of laches-triggering "delay" to the delay in filing the lawsuit in the first place.

¶70 Other courts have expressly recognized that the equitable doctrine of laches can apply when a litigant who files an otherwise-timely lawsuit takes an inordinately long time to prosecute it. *See, e.g.*, *Miller v. Bloomberg*, 466 N.E.2d 1342, 1346 (Ill. App. Ct. 1984) (stating that "failure to prosecute an action after its commencement can also constitute laches"); *Thompson v*

*State*, 31 N.E.3d 1002, 1007 (Ind. Ct. App. 2015) (holding that the doctrine of laches applies to unreasonable delays in "prosecuting a . . . petition"); *see also Atlas One Fin. Group, LLC v. Alarcon*, No. 12-23400-Civ-COOKE/TURNOFF, 2014 WL 12570243, at *4 (S.D. Fla. Mar. 31, 2014) ("Under the doctrine of laches, a person otherwise entitled to relief may be barred from recovery if he has failed to bring or, having brought, has failed to prosecute, a suit for so long a time and under such circumstances that it would be inequitable to permit him now to prosecute the suit.").

¶71  Accordingly, in my view the district court properly determined, as a legal matter, that the doctrine of laches can apply to situations in which a litigant takes an unreasonably long time to prosecute a lawsuit, and is not limited to situations in which a litigant unreasonably delays in filing one. *See Veysey v. Nelson*, 2017 UT App 77, ¶ 5, 397 P.3d 846 ("Whether laches applies is a question of law, which we review for correctness.").

¶72  After it is established, as a legal matter, that the doctrine can apply in a particular case, the "application of laches to a particular set of facts and circumstances presents a mixed question of law and fact," a framework whereunder "we review the [district] court's conclusions of law for correctness and will disturb its findings of fact only if they are clearly erroneous." *Id.* (cleaned up). In my view, the district court's underlying factual findings regarding laches were not clearly erroneous, and the court did not err by concluding that Cannon was prejudiced by Jensen's unreasonable delay in prosecuting the case.

¶73  The district court determined that the filing of Jensen's lawsuit occurred within the applicable statute of limitations, and no party has appealed that determination. Accordingly, the district court does not appear to have held any pre-filing delay against Jensen in connection with its laches analysis. Instead, the court noted that, after the suit was filed, almost nothing occurred for some six years, resulting in multiple order-to-show-cause

hearings before the suit was eventually dismissed, without prejudice. Another whole year passed before the suit was refiled, resulting in approximately seven years of post-filing delay that the district court attributed entirely to Jensen. The court found that, during that time, witnesses' "memories faded and documents were destroyed in the normal course of purging old documents," with the result that, when trial finally occurred, "the extreme passage of time had taken its toll," and "witnesses who testified at trial sometimes struggled with remembering things," including important things like whether certain agreements were ever reduced to writing. Reasoning from these factual findings, the court concluded that "[i]n a case as old as this, prejudice to the defendant can practically be presumed," but found that, in this case, "there was also actual prejudice," including witnesses with poor memories and documents that had been lost.

¶74 I discern no error in the district court's findings or conclusions with regard to laches, and therefore I would affirm the court's dismissal of Jensen's fraudulent nondisclosure claim on that basis. I therefore concur in the result reached by the majority.

———————